**FRIEDMAN v. SCHWELLENBACH et al.**

**No. 27196.**

District Court for the District of Columbia.
April 1, 1946.

Morton Stavis, of New York City, and Sidney V. Smith, of Washington, D. C., for plaintiff.

John F. Sonnett, Asst. Atty. Gen., and Edward M. Curran, U. S. Atty., Lawrence V. Meloy, Atty., U. S. Civil Service Commission, and Jeter S. Ray, Asst. Sol., Department of Labor, all of Washington, D. C. (Joseph M. Friedman, Sp. Asst. to Atty. Gen., and Tobias G. Klinger, of Washington, D. C., on the brief), for defendants.

BAILEY, Justice.

This is an action for declaratory judgment, mandamus, and injunction. Originally named as defendants were Paul V. Mc-Nntt, individually and as Chairman of the War Manpower Commission, and Harry B. Mitchell, Lucille Foster McMillin, and Arthur S. Flemming, individually and as members of the United States Civil Service Commission. Because of the resignation of Mr. McNutt as Chairman of the War Manpower Commission and the transfer on September 17, 1945, pursuant to Executive Order No. 9617, 50 U.S.C.A.Appendix § 601 note (10 F.R. 11929), of that wartime agency and all of its functions, employees, and records, with certain exceptions not here material, to the Department of Labor, Lewis B. Schwellenbach, individually and as Secretary of Labor, has been substituted as a party defendant herein by order of the court dated November 13, 1945.

The plaintiff, who was an employee of the War Manpower Commission, seeks a declaration that he was improperly and unlawfully discharged from that Agency and an order directing his reinstatement. He also seeks injunctive relief against the members of the Civil Service Commission who directed the War Manpower Commission to dismiss him and who, in addition, cancelled all his pending eligibilities for Civil Service employment.

The defendants moved to dismiss the complaint but the court deferred action until the filing of an answer. Since the filing of the answer the plaintiff and defendants have filed motions for a summary judgment.

On February 16, 1942, the President, by virtue of the authority vested in him by section 2 of the Civil Service Act, 5 U.S.C.A. § 633, issued Executive Order No. 9063 (7 F.R. 1075) authorizing the Civil Service Commission to adopt and prescribe such special procedures and regulations relating to the recruitment, placement, and changes in status of personnel in Federal service as it determined to be necessary in order that there would be no delay during the war emergency in filling positions in the Federal service with qualified persons. Said Executive Order further provided that the procedures and regulations thus adopted and prescribed were to be binding with respect to all positions affected thereby which were subject to the provisions of the Civil Service Act and rules. The second paragraph of Executive Order 9063 stated that persons appointed solely by reason of any special procedures adopted under authority of said order to positions subject to the provisions of the Civil Service Act and rules were not thereby to acquire a classified (competitive) civil-service status, but, in the discretion of the Civil Service Commission, might be retained for the duration of the war and for 6 months thereafter.

The President on February 20, 1942, by Executive Order No. 9067 (7 F. R. 1407), further authorized the Civil Service Commission to secure information as to employees of executive departments and agencies who were deemed competent to perform essential war work in departments or agencies having a higher priority classification, and, with the consent of the employees concerned, to effect the transfer of any such employee to meet the personnel needs of a department or agency, having a higher priority classification, and to adopt such rules and regulations and to establish such procedures as might be necessary to carry out its responsibilities thereunder. This Executive Order remained in effect until September 27, 1942 (Executive Order No. 9243, September 12, 1942, 5 U.S.C.A. § 631 note).

Pursuant to Executive Orders 9063 and 9067, the Civil Service Commission prepared and adopted the War Service Regulations, effective March 16, 1942 (Title 5, C.F.R., Sum.Supp., Chapter I, Part 18; 7 F.R. 7723).

In order to expedite employment and transfers to meet war conditions, the Civil Service Commission, pursuant to the aforesaid Executive Orders, expanded its use of conditional appointments and conditional transfers, a practice whereby the Commission effects an immediate employment or transfer, subject to a condition. The condition ordinarily imposed is that the person shall be subject to a character investigation for the purposes of ascertaining the qualifications determinable by such investigation. This procedure enables the Commission to fill a vacancy immediately and complete its examination of the applicant or transferee at a subsequent date. Prior to the war, the Commission's policy was to publish an announcement of the examination, stating the type of position, required qualifications, place of examination, etc., hold an examination, establish a register and certify three names from the top of the register to the agency subject to a character investigation. To meet the necessity of rapid expansion of employment, the Commission, under the authority of Executive Order 9063, dispensed with this peace-time practice and resorted to the speedier methods of recruitment. Persons were placed on the job under a conditional appointment or conditional transfer, and thereafter the Commission conducted its investigation to ascertain certain factors of qualification before certifying as to the eligibility of the applicant or transferee.

Plaintiff was transferred on May 29, 1942, from the Federal Works Agency to the Division of Central Administrative Services, Office for Emergency Management. This transfer was expressly made "subject to character investigation." Without change in status plaintiff, while said investigation was being conducted and while certain of the events hereinafter described were taking place, was involved first in an interoffice transfer (September

16, 1942) to the War Manpower Commission Personnel Branch, Central Administrative Services, Office for Emergency Management, and later (March 27, 1943) in a group transfer shifting all personnel functions of the Office for Emergency Management to the constituent agencies of the Office for Emergency Management, in plaintiff's case, the War Manpower Commission.

Until plaintiff's conditional transfer, effective May 29, 1942, to the Office for Emergency Management, his previous employment with the Federal Government had at all times been in positions excepted from the classified civil service, Act of November 26, 1940, Section 1, 54 Stat. 1211, 5 U.S. C.A. 631a. Said conditional transfer brought plaintiff for the first time within the scope of the War Service Regulations and the Civil Service Rules, and within the jurisdiction of the Civil Service Commission. He was at no time in the Federal classified civil service.

War Service Regulation II, § 3, provides as follows:

"An applicant may be denied examination and an eligible may be denied appointment for any one of the following reasons:

\* \* \* \* \* \*

"(g) a reasonable doubt as to his loyalty to the Government of the United States;

\* \* \* \* \* \*

"Any of the reasons stated in the foregoing subdivisions from (b) through (h) inclusive, shall be sufficient cause for removal from the service."

These disqualifications are elements that come within the scope of an investigation and which usually are only discovered by investigation.

The Commission's established procedure and practice were followed in plaintiff's case where a question of qualification to be determined by investigation is involved.

Pursuant to the condition set forth in the transfer of plaintiff on May 29, 1942, from the Federal Works Agency to the Division of Central Administrative Services, Office for Emergency Management, whereby the transfer and plaintiff's tenure were made subject to a character investigation, the Commission conducted an investigation as to plaintiff's qualifications, suitablity, and fitness. As a result of that investigation, the Commission determined that there was a reasonable doubt as to plaintiff's loyalty to the Government of the United States and that plaintiff was therefore not eligible for Federal employment in a War Service status and, under date of October 27, 1942, requested Central Administrative Services, Office for Emergency Management, to terminate his services. Plaintiff appealed from this decision and a hearing was held on January 26, 1943, before the Board of Appeals and Review of the Commission. At said hearing plaintiff was given full opportunity to present for consideration all the evidence and testimony he desired on the question of his eligibility for a War Service appointment. Thereafter, the Commission, upon review and reconsideration of the entire record, reaffirmed its determination that plaintiff was ineligible for Federal employment and by letter of May 3, 1943, so notified him. The Office for Emergency Management was also notified on May 3, 1943, that the Commission's previous action had been affirmed.

The plaintiff appealed to the proper authorities and exhausted all administrative remedies.

On June 5, 1944, the Commission, after consideration of the complete record, reaffirmed its decision and so notified plaintiff by letter on June 5, 1944. Said letter is as follows:

"United States Civil Service Commission
"Washington, D. C.

"File: BAR:JFE:GD
"June 5, 1944

"Mr. Morton Friedman
"% Personnel Office

"War Manpower Commission
"Washington, D. C.

"My dear Mr. Friedman:

"Reference is made to your appearance before the Commission on April 19, 1944, in further prosecution of your appeal from the finding of ineligibility for continuance in the service.

"The Commission has given most careful consideration to your case including the information developed during the course of the investigations which were made and the testimony before the Board of Appeals and Review at the hearing which was accorded you. Particular attention, however, has been given to your statements and based upon those statements the Commission has concluded that the finding of ineligibility was in accordance with the standards applied in such cases and therefore has affirmed the previous action.

"The Commission's action was based mainly on your activities in connection with the American Peace Mobilization and your shift in attitude and point of view following the declaration of war between Germany and Russia. It may be true that many members of the American Peace Mobilization were not aware that it was Communist-dominated and pro-Communist but it is generally recognized that those who were prominently and actively affiliated with that organization were people who over a period of time had shown sympathy with the Communist cause. Your testimony was that you were sent to the first meeting of the American Peace Mobilization in Chicago as a representative of your local union; that you also were sent to a meeting of the organization in New York City as a delegate, and that you participated actively in their meetings and affairs. You also testified that you were active in the affairs of the Washington Peace Mobilization and served on several of its committees.

"You were admittedly opposed to the United States participation in war before the invasion of Russia by Germany but thereafter you changed your mind and were of the opinion that this country should fight along with the other United Nations. Just how long it was before Pearl Harbor that you changed your mind is not definitely established, but on the occasion of your appearance before the Commission you indicated that it was probably in August of 1941, which obviously was soon after June 22, 1941.

"These matters, together with other activities which have been personally discussed with you, are convincing to the Commission that you are not eligible for retention in the service according to the standards observed by the Commission.

"By direction of the Commission:

"Very respectfully,

"[S]   William C. Hull
"Executive Assistant."

Accordingly, plaintiff's employment was terminated September 12, 1944.

Under date of August 16, 1944, the Civil Service Commission advised plaintiff that any and all applications and eligibilities of plaintiff for examinations were cancelled because information disclosed through investigation indicated that plaintiff did not measure up to the required standard of suitability and fitness. The records of the Civil Service Commission do not disclose that plaintiff had any applications or eligibilities for examination then pending.

The position held by plaintiff during the period April 18, 1943, to September 12, 1944, was that of Chief of the Classification Division of the War Manpower Commission. Plaintiff's employment was thus closely related to the efficient operation of an agency having important duties and heavy responsibilities in mobilizing the Nation's war effort.

The action of the Civil Service Commission in determining after thorough investigation, that there was a reasonable doubt as to plaintiff's loyalty and that therefore he was not qualified under the controlling regulations to obtain a War Service appointment, is asserted to be unlawful as in violation of the Civil Service Act, Civil Service Rule I, Sec. 2, and Sec. 9(a) of the Hatch Political Activities Act, 5 U.S.C.A. § 61h(a). It is also argued that such determination by the Commission abridges plaintiff's fundamental rights guaranteed by the First and Fifth Amendments to the Constitution. The further contention is made that the termination of plaintiff's employment by the War Manpower Commission as a result of the Commission's finding of ineligibility was in violation of Section 6 of the Lloyd-LaFollette Act, 5 U.S.C.A. § 652. None of these assertions can be sustained. The Commission's action was in all respects in complete conformity with law. There has been no unlawful infringement of plaintiff's constitutional liberties.

This is not a case of removal after an absolute appointment. Plaintiff's employment was terminated because he was found ineligible or not qualified to receive a War Service appointment. This is not a case in which plaintiff has been determined to be disloyal. The Commission's determination was only that there was a reasonable doubt as to plaintiff's loyalty to the Government of the United States.

The plaintiff conceded that the right to disqualify Federal employees because of a reasonable doubt of their loyalty would seem obvious enough in time of war. The Commission found reasonable doubt of the loyalty of the plaintiff. It based its finding in part upon the fact that the plaintiff was a member of, and prominently and actively affiliated with, the American Peace Mobilization; participated actively in its meetings and affairs, and served on several of its committees. There were reasonable grounds to believe that this organization

was formed under the auspices of the Communist Party designed to influence the American people to oppose participation in the war against Germany. Within a month after the German invasion of Russia its name was changed to American Peoples' Mobilization and then favored assistance to Britain and Russia in the war against Germany. It can hardly 'be said that there could be no reasonable doubt of the loyalty of a member of a communist organization who opposed war against Germany so long as this country was an ally of Great Britain, a democracy, but became an advocate of war when this country became allied with Russia, a communistic and totalitarian state. The defendants did not find that the plaintiff was disloyal. It was not necessary to go so far; it merely found that it had a reasonable doubt of his loyalty.

It is difficult to see that the Hatch Act has any application to this case. That Act prohibits Federal employees from taking any active part in political management or political campaigns. It is true that under that Act Federal employees retain the right to express their opinions on all political subjects to the same extent as other citizens. The plaintiff has not been denied the right to express his opinions, but if his opinions as expressed and his conduct in conformance with those opinions have raised a reasonable doubt in the minds of the Commission of his loyalty, there is nothing in the Hatch Act that would prevent his removal from office.

The plaintiff also claims that the action of the Commission was in violation of the Lloyd-LaFollette Act, but the plaintiff was not in the classified competitive civil service, and the provisions of the Lloyd-LaFollette Act apply only to persons in the classified civil service.

Apart, however, from the question of whether there was any substantial ground for the action of the Commission, it has acted pursuant to law and the courts are without jurisdiction to control its action so long as it complies with the law. This principle has been followed ever since the case of Decatur v. Paulding, 14 Pet. 497, 39 U.S. 497, 10 L.Ed. 559. In Levine v. Farley, 70 App.D.C. 381, 107 F.2d 186, 191 the Court of Appeals of the District of Columbia affirmed the action of the lower court in dismissing the suit of a plaintiff who sought a writ of mandamus against the Postmaster General to compel the reinstatement of the plaintiff in a position from which he had been removed, the plaintiff claiming that he had been unjustly removed as a result of unfair discrimination. The court said: "We, therefore, hold that, where action is taken in removing from office an employee in the classified service and the action is in accordance with requirements of the statute relating thereto, such action is not reviewable by mandamus, and a court of law has no jurisdiction to inquire into the guilt or innocence of the employee as to the charges upon which he was removed." There are many decisions to the same effect.

It appears, then, that there has been no violation of law by the Commission.

Both the plaintiff and the defendants have moved respectively for a summary judgment. There are no genuine issues of fact; the case is a proper one for that procedure. The motion of the plaintiff for summary judgment will be overruled; that of the defendants sustained and the complaint dismissed with costs.