## UNITED STATES v. MARZANI.
### Cr. No. 48—47.

District Court of the United States for the District of Columbia.
April 25, 1947.

Theron L. Caudle, Asst. Atty. Gen., George M. Fay, U. S. Atty., of Washington, D. C., and John M. Kelley, Jr., Sp. Asst. to Atty. Gen., for plaintiff.

Charles E. Ford, of Washington, D. C., for defendant.

KEECH, Justice.

Under an indictment returned in this jurisdiction on January 17, 1947, the defendant is charged in eleven counts with violations of 18 U.S.C.A. § 80.

It appears from the record now before the Court that defendant was employed on and after March 7, 1942, on a temporary and conditional basis, subject to character and fitness investigation, by the Office of Coordinator of Information and its successor, Office of Strategic Services, and on September 20, 1945, was transferred to the Department of State.

In the first nine counts of the indictment it is charged that on separate occasions, to two different investigative authorities, defendant "did wilfully, unlawfully and feloniously make a false and fraudulent statement and representation" to the effect that he was not a member of the Communist Party; that he had never attended any of its meetings, never contributed any services to the Communist Party, never participated in any of its activities, never made any speeches against conscription; and that he had never used or been known by the name of Tony Whales or any similar name.

The last two counts of the indictment cover similar offenses except that the false and fraudulent statements are alleged to have been made on June 1, 1946, when defendant was being interrogated by a State Department officer.

Defendant has moved to dismiss the indictment on two grounds: (1) That it does not state facts sufficient to constitute an offense against the United States, and (2) that it was not found within three years

next after the alleged commission of the offense. Concededly this latter applies only to counts one to nine, inclusive, since the other two counts are well within the three-year statutory period prescribed by 18 U. S.C.A. § 582.

Briefly summarized, the points advanced in support of the motion are as follows:

(1) The agencies referred to in the several counts of the indictment (Federal Bureau of Investigation as to Counts I to IV, inclusive; Civil Service Commission as to Counts V to IX, inclusive; and the Department of State as to Counts X and XI) were without power or authority to make the inquiries as to which defendant is alleged to have made false statements.

(2) The questions propounded to the defendant were unauthorized, illegal, concerned his private, personal, political activities, and were without the jurisdiction of the agencies involved.

(3) The questions propounded to the defendant were not pertinent to the character and fitness investigation of the defendant as an employee of the United States Government.

(4) The questions asked of the defendant were not material or relevant to the character and fitness investigation.

(5) The alleged false statements did not serve to conceal any illegal or prohibited acts.

(6) The indictment fails to allege any specific intent on the part of defendant to defraud the government.

(7) The language of the statute (18 U. S.C.A. § 80), insofar as applicable to defendant under the circumstances, is so vague and indefinite as to be repugnant to the Fifth Amendment to the Constitution.

(8) The indictment violates the Fifth and Sixth Amendments to the Constitution as it fails to inform defendant of the nature and cause of the accusation.

(9) The indictment fails to state facts sufficient to constitute a crime.

(10) to (16), inclusive: The indictment violates the Fifth Amendment to the Constitution since it charges the same offense in a multiplicity of counts.

(17) Counts one to nine of the indictment are barred by the statute of limitations (18 U.S.C.A. § 582).

(18) Conviction hereunder would pervert the legislative intent in enactment of the statute (18 U.S.C.A. § 80) and deprive defendant of his constitutional rights.

These points will be dealt with in the order listed:

■ (1) Authority of Federal Bureau of Investigation to investigate defendant:

In addition to its broad general investigative powers (5 U.S.C.A. § 300) the Congress of the United States specifically vested this agency of the government with authority to investigate employees of the Federal Government "who are members of subversive organizations or advocate the overthrow of the Federal Government by force." Appropriation Acts of June 28, 1941, Public Law 135, 77th Congress, 55 Stat. 265, and July 2, 1942, Public Law 644, 77th Congress, 56 Stat. 468.

Furthermore, the Congress specifically provided in the so-called Hatch Act (53 Stat. 1148, 18 U.S.C.A. § 61i) that:

"It shall be unlawful for any person employed in any capacity by any agency of the Federal Government, whose compensation, or any part thereof, is paid from funds authorized or appropriated by any Act of Congress, to have membership in any political party or organization which advocates the overthrow of our constitutional form of government in the United States."

(b) Authority of Civil Service Commission to investigate defendant:

In view of the recent holding in this Court in the case of Friedman v. Schwellenbach, D.C., 65 F.Supp. 254, affirmance of which by our Court of Appeals, App.D.C., 159 F.2d 22, was approved by the Supreme Court in denying certiorari, 67 S.Ct. 979, it would appear that no further discussion on this point in necessary.

(c) Authority of State Department officer to interrogate defendant:

Without further elaboration, it is sufficient to point out that the Appropriation Act for the State Department for the fiscal year ending June 30, 1946,[1] provides:

---

[1] Public Law 61, 79th Congress, 59 Stat. 169.

618

"No part of any appropriation contained in this Act shall be used to pay the salary or wages of any person who advocates, or who is a member of an organization that advocates, the overthrow of the Government of the United States by force or violence."

And, in further answer to this objection on the part of defendant, what better source of information would be available to an officer of the executive department than the individual himself?

■ (2), (3), (4). In view of the authority of the agencies involved, the Court holds as a matter of law that the questions propounded of defendant were pertinent, relevant, material, and well within the scope of the investigation as to the defendant's character and fitness, for they had a direct bearing thereon. This is doubly true in time of war, and particularly in view of the character of the agencies involved and the nature of the work with which they were charged.

■ (5) We are not concerned here with whether or not the defendant was a member of the Communist Party, participated in its activities, or used an alias. That is a matter of proof for the trial. It is true that membership in the Communist Party is not in and of itself unlawful. A comparable contention was advanced in United States v. Barra, 2 Cir., 1945, 149 F.2d 489, 490, and decided adversely to defendant. In that case the Court stated that once it appears that the department "has colorable authority to do what it is doing" an accused under the statute (18 U.S.C.A. § 80,) cannot justify his falsehood by a collateral attack upon the authority. The authorities in support of this ruling are too numerous to enumerate.

■ (6) While the question of intent is a matter for the trial court (United States v. De Lorenzo, 2 Cir., 1945, 151 F.2d 122), it should be borne in mind that the indictment charges the defendant with "wilfully, unlawfully and feloniously" making "false and fraudulent" statements. The word "feloniously" itself, in an indictment, means with "criminal intent." Stephens v. United States, 9 Cir., 262 F. 957; Miller on Criminal Law, Ch. 5, Sec. 20(f). This very point was before the court in the case of Bank of Montreal v. Thayer, C.C., 7 F. 622, 624, in which the complaint alleged certain representations were made "wrongfully, fraudulently, and falsely." The court there said:

"It is said that a fraudulent intent is not alleged; but it is difficult to see how representations as to a matter of fact can be wrongful, fraudulent, and false, without they are made with a fraudulent intent. It is certainly necessary to prove the intent, and of course it must be alleged, but no form of words is necessary. If the terms employed by the pleader, taken in their ordinary signification, necessarily include the idea of a fraudulent intent, that is enough. We must give to the term 'fraudulently,' as found in the petition, the meaning which the law gives it, and which attaches to it in common usage, to-wit, a deliberately-planned purpose and intent to deceive and thereby to gain an unlawful advantage. After stating what representations were made with sufficient particularity, it is enough to aver that they were wrongful, false and fraudulent. It is not necessary in such a pleading to define the meaning of these terms; and to say that the representations were made with intent to deceive, would add nothing to the allegation that they were falsely and fraudulently made."

■ (7), (8), (9). This indictment more than adequately charges the crime, states facts sufficient to constitute a crime, and apprises defendant of the charges against him, thereby preserving his constitutional guarantees. United States v. Meyer, 2 Cir., 1944, 140 F.2d 652.

■ (10) to (16), inclusive: Each count of the indictment charges an offense different from the others either from a standpoint of time when the alleged false and fraudulent statements were made or with respect to different governmental agencies. The test of double jeopardy through a multiplicity of counts is whether a conviction on one count and an acquittal on another would bring about a contradiction on the face of the verdict.

(17) The first nine counts of this indictment, which was returned January 17, 1947, charge the making of false and fraudulent statements by defendant between July 29, 1942, and April 20, 1943. If the general statute of limitations (18 U.S.C.A. § 582) applies, concededly the prosecution as to these counts is barred.

It is the government's claim that the running of the statute was, on August 24, 1942, tolled by the enactment on that date of 18 U.S.C.A. § 590a, which covered, inter alia, offenses involving "defrauding or attempts to defraud the United States or any agency thereof whether by conspiracy or not, and in any manner."

The defendant's argument, in brief, is that the suspension statute 18 U.S.C.A. § 590a) cannot be distorted so as to make it applicable to any crime of which fraud in the ordinary sense is not an integral part (United States v. Noveck, 1926, 271 U.S. 201, 46 S.Ct. 476, 70 L.Ed. 904; United States v. McElvain, 1926, 272 U.S. 633, 47 S.Ct. 219, 71 L.Ed. 451; United States v. Scharton, 1932, 285 U.S. 518, 52 S.Ct. 416, 76 L.Ed. 917), and, since the suspension statute was enacted as a part of the Contract Settlement Act of 1944, 58 Stat. 667, 781, 18 U.S.C.A. § 590a, it necessarily relates to frauds involving pecuniary or property loss to the United States.

This indictment is based solely on 18 U.S.C.A. § 80, which is a fraud statute, and the case is distinguishable from those heretofore passed upon wherein an attempt was made to apply an earlier suspension statute to prevent the tolling of the statute of limitations to separate and distinct crimes where fraud was not an element of the offense as defined by the penal statute on which the indictment was based.

The pertinent portions of the applicable statutes read as follows:

18 U.S.C.A. § 80: "* * * whoever shall * * * make or cause to be made any false or fraudulent statements or representations * * * in any matter within the jurisdiction of any department or agency of the United States * * *

shall be fined not more than $10,000 or imprisoned not more than ten years, or both."

18 U.S.C.A. § 582: "No person shall be prosecuted, tried, or punished for any offense, not capital, except as provided in section 584 of this title [referring to crimes under revenue or slave trade laws] unless the indictment is found, or the information is instituted, within three years next after such offense shall have been committed."

18 U.S.C.A. § 590a: "The running of any existing statute of limitations applicable to any offense against the laws of the United States (1) involving defrauding or attempts to defraud the United States or any agency thereof whether by conspiracy or not, and in any manner * * * shall be suspended until three years after the termination of hostilities in the present war * * *."

Following the decision of the Supreme Court in United States v. Gilliland, 1941, 312 U.S. 86, 93, 61 S.Ct. 518, 522, 85 L. Ed. 598, it cannot be successfully contended that 18 U.S.C.A. § 80, relates only to fraudulent causing of pecuniary or property loss to the government. Therein, Chief Justice Hughes declared:

"The amendment (Act of June 18, 1934, 48 Stat. 996) eliminated the words 'cheating and swindling' and broadened the provision so as to leave no adequate basis for the limited construction which had previously obtained. The statute was made to embrace false and fraudulent statements or representations where these were knowingly and willfully used in documents or affidavits 'in any matter within the jurisdiction of any department or agency of the United States.' In this there was no restriction to cases involving pecuniary or property loss to the government. The amendment indicated the congressional intent to protect the authorized functions of governmental departments and agencies from the perversion which might result from the deceptive practices described. We see no reason why this apparent intention should be frustrated by construction." [2]

---

[2] See also United States v. Mellon, 2 Cir., 1938, 96 F.2d 462, certiorari denied 304 U.S. 586, 58 S.Ct. 1061, 82 L. Ed. 1547; United States v. Presser, 2 Cir., 1938, 99 F.2d 819; Swisher v. United States, 10 Cir., 1940, 109 F.2d 1000;

Section 590a of 18 U.S.C.A. was enacted August 24, 1942, as a separate and distinct Act of Congress (Public Law 706, 77th Congress, 56 Stat. 747), to suspend temporarily the running of statutes of limitations applicable to offenses involving defrauding or attempts to defraud the United States or any agency thereof. Section 19(b) of the Contract Settlement Act, enacted July 1, 1944, Public Law 395, 78th Congress, 58 Stat. 649, 667, merely amended the 1942 act by enlarging it specifically to include any offense under the Contract Settlement Act and by extending the time for suspension of the statutes of limitations. Section 28 of the Surplus Property Act of 1944, enacted October 3, 1944, Public Law 457, 78th Congress, 58 Stat. 765, 781, again amended the 1942 act by making it applicable to a further class of offenses, those under the Surplus Property Act. It is significant to point out that neither of these amendments changed the wording of the statute here involved, namely:

"* * * defrauding or attempts to defraud the United States or any agency thereof whether by conspiracy or not, and in any manner * * *."

It cannot, therefore, be successfully argued that these amendments limited the scope of the suspension statute to frauds involving pecuniary or property loss to the government.

While it is true that the amendments to the original act are to be found in the Contract Settlement Act and the Surplus Property Act, this fact is neither significant nor controlling, for both of the latter acts contain other provisions that are not germane to the subject matter of either contract settlements or surplus property.

In contrast with the 1942 act, the suspension of the running of the statutes of limitations for similar offenses enacted after World War I, discussed at length by counsel for defendant, was enacted as a proviso appended to R.S. § 1044, 42 Stat. 220, 18 U.S.C.A. § 582, the section dealing with general limitations on offenses not capital. According to rules of construction, a proviso containing exceptions to a general policy is to be strictly construed; but it is important to note that here we are not dealing with a proviso clause—on the contrary, we are concerned with the main body of the act itself.

One of the authorized functions of governmental departments and agencies, particularly in time of war, is to see that their employees are loyal to our democratic form of government and to no other. For an employee to falsely state that he was not a member of the Communist Party amounts to a deceptive practice which, as Justice Hughes stated in United States v. Gilliland, supra, was exactly what was encompassed within the amendment of June 18, 1934.

As to whether or not fraud is inherent in false answers given by a government employee in connection with his employment, see Palmer v. Colladay, 18 App.D.C. 426, wherein it is stated:

"The Civil Service Commission is a legal agency of the United States, created by Act of Congress; and through it the President undertakes to find and appoint such persons as may best promote the efficiency of the civil service; and to that end regulations are prescribed by means of which the age, health, *character,* knowledge, and ability for the branch of service into which he seeks to enter, of each candidate, may be fully ascertained.

"If falsehoods are imposed upon the persons charged with the duty of ascertaining these qualifications, and made to take the place of facts, then the United States is defrauded, is deprived by deceit of the knowledge justly due to its officers in the proper discharge of its business, and it is thereby liable to obtain a less efficient employee." (Emphasis supplied.)

See also United States v. Curley, C.C., 122 F. 738, certiorari denied 195 U.S. 628, 25 S.Ct. 787, 49 L.Ed. 351.

United States v. Agnew, D.C.E.D.Pa., 1947, 6 F.R.D. 566.

See also United States v. Zavala, 2 Cir., 1944, 139 F.2d 830, 831, which holds that 18 U.S.C.A. § 80, covers the use of a document to defraud and the use of any false statement, oral or written, as to any matter within the jurisdiction of any department or agency of the United States. Its application, therefore, to the false statements embraced in this indictment can hardly be questioned.

In Burdick v. Post, 12 Barb., N. Y., 168, 186, it is said that "to defraud" is to withhold from another that which is justly due him or to deprive him of a right by deception or artifice, and Bouvier adopts this definition. Thus it will be seen that the word "defraud" in legal acceptation refers to rights, as well as property and money. "Moreover, when the word 'defraud' is used in connection with the government and the law itself, it naturally and necessarily has a broader and a different meaning than when used in connection with personal rights or in connection with individual rights of property." Curley v. United States, 1 Cir., 130 F. 1, 11.

■ (18) Where there is no ambiguity in the statute, it is unnecessary to consider legislative intent.

In the light of the foregoing, defendant's motion to dismiss is denied.