917 F.2d 1305
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Sheldon I. WIELAND, Jr., Petitioner-Appellant,
v.
Robert BROWN, Director, Michigan Department of Corrections,
Respondent-Appellee.
 No. 89-2213.
 United States Court of Appeals, Sixth Circuit.
 Nov. 8, 1990.
 
 Before WELLFORD and DAVID A. NELSON, Circuit Judges, and MEREDITH,* District Judge.
 PER CURIAM:
 
 
 1
 Defendant, Sheldon Wieland Jr., appeals his denial of habeas corpus following conviction for first degree criminal sexual conduct in Michigan state court proceedings. The issues presented are: whether Wieland filed a timely notice of appeal and, if so, whether Wieland was subjected to double jeopardy or denied due process of law in respect to overlapping dates in separate counts of the state indictment. We affirm.
 
 
 2
 At 34 years of age Wieland, a school teacher, was charged with six counts of criminal sexual conduct, first degree, with 12-year-old Debbi Hockman, in February 1984. Mich.Comp.Laws Sec. 750.520b(1)(a). The sexual acts allegedly took place at the following times:
 
 
 3
 Count I. On or about July 26, 1983.
 
 
 4
 Count II. On August 25, 1983.
 
 
 5
 Count III. On or about September 5 through September 19, 1983 (ultimately amended to September 6 through September 19, 1983).
 
 
 6
 Count IV. On or about September 26, 1983 (ultimately amended to September 16, 1983).
 
 
 7
 Count V. On or about October 10, 1983.
 
 
 8
 Count VI. On or about October 11, through October 17, 1983.
 
 
 9
 When Wieland was bound over for trial on these six charges the third count was amended to read "On or about September 6, 1983, through September 19, 1983," and the fourth count was amended to read "On or about September 24, 1983." There was no apparent overlap in dates on the face of the indictment at this juncture.
 
 
 10
 Prior to trial Debbi Hockman's mother discovered a telephone bill which indicated that Count IV was incorrect in its date. This phone bill indicated that Mrs. Hockman had called long distance to her daughter on September 16, 1983 which coincided with Debbi's refreshed recollection that one act of intercourse with Wieland had occurred while her parents were out of town on that night. After this discovery, the prosecution filed a pretrial motion to amend count IV to reflect the September 16 date. Wieland objected to this amendment raising the issue of overlap in counts III and IV since September 16 falls within September 6 through September 19 (the amended dates of the Count III), and noted that an alibi defense had already been prepared and offered for the September 24 date. The prosecution suggested amendment of count III to eliminate the 16th date, and Wieland maintained then that he was being subjected to double jeopardy. The amendment to count IV was allowed but count III was not amended. Somehow the trial court overlooked the apparent overlap after this change.
 
 
 11
 At trial Debbi Hockman testified about her babysitting for Wieland three to four times a week. She testified that he began making sexual advances that eventually resulted in intercourse. The allegations of sexual misconduct on the night of September 16 were corroborated to a greater degree than the other dates. On that evening Debbi and a friend stayed the night at Wieland's house because the Hockmans were out of town. The friend, Mary Priest, testified that she awoke during the night to find Wieland and Debbi Hockman "lying down and kissing," and revealed further details of her observations early on the morning of September 17.
 
 
 12
 During the second day of jury deliberation after the trial the following exchange took place between the judge and the jury foreman:
 
 
 13
 COURT: Mr. Foreman, would you rise, please? We have a question from you stating: "Since question number four, on or about September 16, falls within the dates of the question number three, September 6 through 19, does this now dictate that if guilty on number four, the answer must also be the same on number three?"
 
 
 14
 The answers to question number three and question number four need not be consistent.
 
 
 15
 Does that answer your question, Mr. Foreman?
 
 
 16
 FOREMAN: I don't believe it fully answers the question, Your Honor. Since the 16th does fall within the scope of the 6th through the 19th, the question was if it was guilty on the 16th, then it must also have been guilty somewhere between the 6th and the 19th, because it does fall on the same question.
 
 
 17
 COURT: No, because the 16th is a specific date and the other dates are collective, so they need not be consistent answers.
 
 
 18
 FOREMAN: Okay. Then I have a question then. May I ask it?
 
 
 19
 COURT: Sure.
 
 
 20
 FOREMAN: Okay, Then one could say not guilty with the exception of the 16th, which does fall in there, but we don't have a slot like that.
 
 
 21
 COURT: Then just put down not guilty.
 
 
 22
 FOREMAN: Very good. Thank you, Your Honor.
 
 
 23
 Wieland then raised his objection to the existence of the two charges stating that he was in danger of facing double jeopardy. The prosecution again offered to exclude September 16 from count III, but the court ordered no such amendment. The jury returned a verdict of not guilty on all counts except as to Count IV. The trial court sustained the jury verdict and sentenced Wieland on this count.
 
 
 24
 The Michigan Court of Appeals affirmed the conviction, and the Michigan Supreme Court denied further appeal. Wieland then pursued a writ of habeas corpus to the federal courts. The district court denied the petition, finding that a potential for multiplicity in the overlap between counts III and IV but that this problem was cured by the exchange between foreman and court.
 
 
 25
 Wieland requested a certificate of probable cause pursuant to Federal Rule of Appellate Procedure 22(b). The district court granted the request on April 14, 1988. No further action was taken for nearly a year. On March 21, 1989, Wieland filed a motion to enlarge appeal time, on the basis that he never received the district court's order granting the certificate of probable cause. (Neither had prosecution nor the appeals court clerk received the order). This motion was denied in an opinion and order entered May 15, 1989. Wieland moved for reconsideration which motion was also denied by the district court on October 2, 1989, and this appeal ensued.
 
 1. Timeliness of notice of appeal
 
 26
 Nearly one year passed between the district court's denial of habeas relief (March 31, 1988) and Wieland's original motion to enlarge the appeal period (March 21, 1989). Wieland had requested a certificate of probable cause prior to appeal on April 8, 1988 since that issue had not been resolved in the March 31, 1988 order. The certificate was granted on April 14, 1988, but Wieland did not file notice of appeal until October 10, 1989, over one year and a half later. Because he did not receive a copy of the certificate of probable cause until March 1989 Wieland claims that he should be allowed to bring this appeal (Wieland finally telephoned to request the status of the matter during the week of March 6, 1989 when he learned for the first time that the certificate had long since been issued).
 
 
 27
 28 U.S.C. Sec. 2107 requires a notice of appeal to be filed within thirty days of the entry of judgment. It also provides that the "district court may extend the time for appeal not exceeding thirty days from the expiration of the original time ... prescribed, upon a showing of excusable neglect based on failure of a party to learn of the entry of the judgment, order or decree" (emphasis added). Federal Rule of Appellate Procedure 4(a) places a similar thirty day time limit on filing a notice of appeal and limits the extension a district court may grant to thirty days past the prescribed time or ten days from the date of order granting an extension, whichever is later, if the motion for extension is made within the original thirty day period.[1] In addition Rule 26(b), while allowing enlargement of times prescribed by some of the rules, specifically prohibits enlargement of the time for filing a notice of appeal. Filing of a notice of appeal is "mandatory and jurisdictional." United States v. Robinson, 361 U.S. 220, 224 (1958).
 
 
 28
 Wieland argues that he was forced to wait because the "course of appeal proceedings [is] affected by whether or not [the court] issue[s] a certificate of probable cause." There is no specific rule, however, precluding the filing of a notice of appeal prior to receipt of the certificate of probable cause, as noted by the district court, although it may later be subject to challenge. The certificate of probable cause is merely an independent prerequisite to proceeding with the appeal. Fitzsimmons v. Yeager, 391 F.2d 849, 854 (3rd Cir.1968), cert. denied 393 U.S. 868 (1968).
 
 
 29
 Thus, there is a serious question of jurisdiction here. In his memorandum for reconsideration of the order denying his motion to enlarge the time for appeal Wieland argues that he in fact initially complied with the applicable rules by filing a motion for a certificate of probable cause. In support of this contention he cites McMillan v. Barksdale, 823 F.2d 981 (6th Cir.1987). In that case the district court accepted a prisoner's pro se motion for a certificate of probable cause as a notice of appeal although the formal notice of appeal was not filed until three months after the order appealed from had been entered. McMillan looked to the purpose of the rules and found that the request for the certificate of probable cause showed intent to appeal and since it had been filed within the thirty day limit was sufficient under the circumstances to satisfy the rules.
 
 
 30
 Although Rule 3(c) does suggest a form to be followed, there is no magic document called a Notice of Appeal. Any document that meets the requirements of Rule 3(c) and is filed within the time prescribed by Rule 4(a) can function as a notice of appeal.
 
 
 31
 Id. at 983.
 
 
 32
 Despite McMillan, the district court felt the present case to be distinguishable because Wieland was represented by counsel, he was not a prisoner at the time, and the delay at issue here was much longer than in McMillan. We believe that the McMillan holding is probably limited to prisoners' pro se requests for certificates of probable cause filed within the Rule 4(a) time limits.
 
 
 33
 McMillan was decided prior to Torres v. Oakland Scavenger Co., 487 U.S. 312 (1988) and this court's interpretation of that holding in Minority Employees v. Tennessee Dep't of Employment Sec., 901 F.2d 1327 (6th Cir.1990) (en banc), cert. denied sub nom. David v. Tennessee Dep't of Employment Sec., No. 90-169, slip op. (U.S. Oct. 1, 1990). Torres interpreted Federal Rule of Appellate Procedure 3(c) which requires that a "notice of appeal shall specify the party or parties taking the appeal ... and shall name the court to which the appeal is taken," to preclude jurisdiction over plaintiffs who were indicated only through the words "et al." in the notice of appeal caption. Minority Employees strictly construed Torres, finding a failure specifically to name parties appealing to be more than an excusable informality. 901 F.2d at 1334. In this case, defendant does not name this court, as the rule requires, as the one to which he takes an appeal.
 
 
 34
 Without deciding that we have no jurisdiction, and it is certainly doubtful,[2] we conclude that Wieland cannot prevail on the merits of his claim.
 
 2. Double jeopardy
 
 35
 The Fifth Amendment provides in part that "[n]o person shall ... be subject for the same offense to be twice put in jeopardy of life or limb." The guaranty against double jeopardy applies against states by way of the Fourteenth Amendment. Benton v. Maryland, 395 U.S. 784 (1969). It is designed to
 
 
 36
 protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.... The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.
 
 
 37
 Green v. United States, 355 U.S. 184, 187-88 (1957).
 
 
 38
 Wieland argues that the overlapping time periods in amended counts III and IV placed him twice in jeopardy for the same offense. Double jeopardy cases typically involve attempted second prosecutions after the defendant has been acquitted, or convictions of both a substantive crime and the lesser included offense. On the other hand, it is clear that a prosecution is not unconstitutional merely because it has several counts which may involve an overlap. The overlap in dates between counts III and IV appears to give the jury an opportunity to convict twice for a crime committed on or about September 16.[3] Nonetheless, the record demonstrates that the jury understood that count III was a general count covering activity over a period of time during which Debbi Hockman was allegedly babysitting and distinguished that from count IV which alleged a specific instance of conduct tied to a particular date. The proper course would have been to amend count III to formally omit September 16 (and September 17) as did the jury for all practical purposes, and as the prosecutor offered to do twice.
 
 
 39
 In North Carolina v. Pearce, 395 U.S. 711 (1969) the Supreme Court interpreted the Fifth Amendment to protect
 
 
 40
 against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.
 
 
 41
 Id. at 717 (citations omitted). "In sum, the double jeopardy clause prohibits both successive prosecutions and multiple punishments for the 'same offense' " Thomas, Rico Prosecutions and the Double Jeopardy/Multiple Punishment Problem, 78 Nw.U.L.Rev. 1359, 1360 (1984). Wieland claims that he has been twice prosecuted for the "same offense" and has suffered double jeopardy. He also claims to have suffered under the "multiplicity" doctrine which is related to double jeopardy multiple punishment analysis. The multiplicity claim appears most relevant here.
 
 
 42
 Multiplicity is the charging of a single offense in several counts or in several charging instruments. The danger of a multiplicitous indictment is that it may violate double jeopardy by resulting in multiple sentences or punishments for a single offense, United States v. Hearod, 499 F.2d 1003, 1005 (5th Cir.1974), or that it may prejudice the defendants by causing the jury to convict on a given count solely on the strength of evidence on the counts remaining. Id.
 
 
 43
 A multiplicitous indictment need not necessarily be set aside. United States v. Duncan, 850 F.2d 1104, 1108 n. 4 (6th Cir.1988) (dictum). Such an indictment may be cured through election or dismissal of counts. See e.g. United States v. Feldhacker, 849 F.2d 293, 298 (8th Cir.1988), cert. denied sub nom. Sink v. United States, 488 U.S. 1012 (1989) (election of counts curing multiplicitous indictment). Even after trial a multiplicitous indictment need not necessarily be dismissed, especially if there was no increased sentence or if duplicative convictions can be vacated. See United States v. Wilson, 721 F.2d 967, 971 (4th Cir.1983) (mere inclusion of two multiplicitous counts did not warrant new trial; remand for resentencing on one count instead of both); United States v. Kimberlin, 781 F.2d 1247, 1254 (7th Cir.1985) (remedy for multiple punishments resulting from multiplicitous indictment is to vacate three of four convictions), cert. denied, 479 U.S. 938 (1986); United States v. Brown, 688 F.2d 1112, 1121 (7th Cir.1982) (danger of multiplicitous indictment, multiple punishment, can be remedied at any time by allowing only a single punishment); United States v. Peacock, 761 F.2d 1313, 1319-20 (9th Cir.) (remedy for conviction on multiplicitous indictment is to vacate or reverse multiplicitous count rather than to require new trial), cert. denied, 474 U.S. 847 (1985); United States v. Davis, 799 F.2d 1490, 1494 (11th Cir.1986) (per curiam) (remedy for duplicative sentence resulting from multiplicitous indictment is to vacate duplicative conviction). This authority demonstrates that the danger of multiple punishment in a multiplicitous indictment or information may constitutionally be remedied at any stage. In our view, Wieland was not exposed to multiple punishment under the circumstances since he was only convicted for a single specific offense on or about September 16. See United States v. Lewis, 716 F.2d 16, 23 (D.C.Cir.), cert. denied sub nom., Motlagh v. United States, 464 U.S. 996 (1983).
 
 
 44
 Furthermore, any possible prejudice that arose from the overlap in the information against Wieland was cured through the interchange between the court and jury. We are conviced, as were the Michigan courts, that Wieland received due process of law and that his trial was essentially fair, even in the face of the overlap in time in the indictment counts III and IV. The jury fully understood any possible ambiguity in the indictment and, as a practical matter, eliminated it to find defendant guilty beyond a reasonable doubt on or about September 16 and on no other day. See United States v. Sherman, 821 F.2d 1337, 1339-40 (9th Cir.1987). In effect, it may well be said that the trial court directed the jury to find not guilty on count III when the jury explained its dilemma.
 
 
 45
 Wieland relies on United States v. Marzani, 71 F.Supp. 615 (D.C.1947); aff'd, 168 F.2d 133 (D.C.Cir.1948); aff'd, 335 U.S. 895 (1948), to make his case. Marzani stated that "[t]he test of double jeopardy through a multiplicity of counts is whether a conviction on one count and an acquittal on another would bring about a contradiction on the face of the verdict." 71 F.Supp. at 618. No authority is cited for this proposition. Despite Marzani, we believe, along with the Michigan courts that the dialogue between the court and jury makes it clear that the jury found Wieland guilty of criminal sexual conduct on or about September 16 only. On this basis, we decline to find any constitutional violation.
 
 
 46
 The decision of the district court is accordingly AFFIRMED.
 
 
 
 *
 The Honorable Ronald E. Meredith, United States District Judge for the Western District of Kentucky, sitting by designation
 
 
 [1]
 Rule 4(a)(5) reads: "The district court, upon a showing of excusable neglect or good cause, may extend the time for filing a notice of appeal upon motion filed not later than 30 days after the expiration of [the 30 day period initially granted after entry of judgment or order for filing an appeal].... No such extension shall exceed 30 days past such prescribed time or 10 days from the date of entry of the order granting the motion [for extension] whichever occurs later."
 
 
 [2]
 McMillan notes that the document taken instead of a notice of appeal must "meet[ ] the requirements of Rule 3(c)," which rule requires naming the court as noted above. 823 F.2d at 983
 
 
 [3]
 We have no problem with a conviction for an offense charged to have been committed "on or about September 16," if the evidence supports a reasonable basis that it occurred in the early morning hours of September 17