STATE, Plaintiff in error, v. ANTES, and another,
Defendants in error.

*Nos. 75–470–CR, 75–740–CR. Argued October 7, 1976.—*
*Decided November 16, 1976.*
(Also reported in 246 N. W. 2d 671.)

320

For the plaintiff in error the cause was argued by *David J. Becker,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the defendants in error the cause was argued by *Melvin F. Greenberg,* assistant state public defender, with whom on the brief was *Howard B. Eisenberg,* state public defender.

BEILFUSS, C. J. Two issues are presented:

(1) Is the order dismissing the informations, but with leave to amend them, appealable?

(2) Is an unloaded pellet gun a dangerous weapon?

On the question of appealability, both the state and the defendant agree the applicable statute is sec. 974.-05(1)(a), which provides:

"(1) A writ of error or appeal may be taken by the state from any:

"(a) Final order or judgment adverse to the state made before jeopardy has attached or after waiver thereof."

" '. . . [T]he test to determine whether an order is a "final order" is its effect on the rights of the parties. If an order closes the matter and precludes further hearing and investigation it is final; but an order which does not completely dispose of the subject matter and settle the rights of the parties is not final. [Cases cited.] . . . .' " *Estate of Stoeber*, 36 Wis.2d 448, 452, 153 N.W.2d 599, 601 (1967); *Herman Andrae Electrical Co. v. Packard Plaza, Inc.*, 16 Wis.2d 44, 48, 113 N.W.2d 567, 569 (1962).

Amplifying the above test, this court stated:

"While it is generally true that to be final an order must dispose of the whole matter in litigation, it is also true that an order is appealable where even though it does not dispose of the entire subject matter in litigation it does terminate a particular proceeding or action." *State v. Bagnall*, 61 Wis.2d 297, 302, 212 N.W.2d 122, 125 (1973).

The state argues the dismissal of the armed robbery charge was a final order because it precluded a trial on that issue. The defendant's position is that the proceeding has not been terminated because the defendant can still be tried for robbery under the challenged order. We do not believe the defendant's position is sound. If the defendant is tried on the robbery charge regardless of whether he is found guilty or not, he could not be tried again on a charge involving the same

incidents and basically the same facts. To do so would violate the constitutional prohibition of double jeopardy. The state would lose its right, if it has one, to try him on the armed robbery charge. In its present posture the question of whether an unloaded pellet gun can be a dangerous weapon is one of law and not fact.

■ We conclude the state's position is correct—the order does preclude a trial on the armed robbery charge is a final one, and, as such, is appealable.

Our attention has been called to two decisions of this court: *Tell v. Wolke,* 21 Wis.2d 613, 124 N.W.2d 655 (1963), and *State ex rel. Beck v. Duffy,* 38 Wis.2d 159, 156 N.W.2d 368 (1968).

In *Tell,* a district attorney had eight witnesses present at a preliminary examination but took testimony from only one. This witness was impeached by defense counsel and the trial court granted a motion for dismissal. A second complaint was issued and the same eight witnesses were subpoenaed by the state. The defendant opposed a second preliminary by seeking a writ of habeas corpus. The writ was quashed and the defendant appealed. The defendant argued that the state could not reissue the complaint. Construing sec. 955.-20, Stats. (now sec. 970.04), this court held that the state could reissue.

One policy consideration supporting this decision was the belief that a discharge on a preliminary hearing should not have the same effect as an acquittal after a trial on the merits. *Tell, supra* at 617, 124 N.W.2d at 658. The *Tell* decision was primarily a holding that when new or unused evidence would support a finding of probable cause a second complaint could be issued. This was a construction of the statute. A problem is presented by dicta of the court that "[t]he state has no appeal from errors of law committed by a magistrate upon preliminary examination. . . ." *Id.* at 619, 124 N.W.2d at 659. In *Beck, supra* at 166, 156 N.W.2d

at 372, the court quoted this language from *Tell* and an additional quote which stated: ". . . '*The only way an error of law committed on the preliminary examination prejudicial to the state may be challenged or corrected is by a preliminary examination on a second complaint.* . . .' "

Beck, as appellant, was arguing that criminal proceedings could not be recommenced since the first charge was dismissed. Relying on *Tell*, the *Beck* court held that the issuance of a second complaint was proper. *Beck, supra* at 164, 156 N.W.2d at 371. The *Tell* and *Beck Cases* were judicially sound decisions. They correctly construed sec. 955.20, Stats. (970.04) and were based on sound policy.

▐ If the district attorney has evidence which will show probable cause that a defendant committed a crime and this evidence was not used at the first preliminary, he ought to be able to reissue. But in establishing grounds for allowing the reissuance, *Tell* and *Beck* went beyond construing the statute. The language concerning the lack of appealability of errors of law was unnecessary to support those decisions and is withdrawn. If an error of law is made at a preliminary hearing which results in a final order which is prejudicial to the state, the final order is appealable. In this case the dismissal of *armed* robbery was a final order and is therefore appealable.

▐▐ *Tell* and *Beck, supra,* stand for the proposition that after the discharge of a defendant at a preliminary examination the state may reissue a complaint if it has or discovers additional evidence. *See* sec. 970.04, Stats. But if the state has no additional evidence or believes an error of law was committed it should be able to appeal.

The question of law before us is whether an unloaded pellet gun can be a dangerous weapon when used in a robbery.

The defendant was charged with a violation of sec. 943.32(1)(b) and (2), Stats.[1] In substance the informations alleged the defendant did with the intent to steal from the victim by threatening the imminent use of force with the intent to compel acquiescence while armed with a dangerous weapon.

The statutory definition of a dangerous weapon is contained in sec. 939.22(10), Stats. It is as follows:

" 'Dangerous weapon' means any firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or great bodily harm, or any other device or instrumentality which, in the manner it is used or intended to be used, is calculated or likely to produce death or great bodily harm."

■ An analysis of this statute reveals three separate categories. The first category concerns firearms. Any firearm, loaded or unloaded, is a dangerous weapon. A pellet gun is not a firearm.[2] A firearm acts by force of gunpowder, and the pellet gun here acted by force of a $CO_2$ cartridge. Accordingly, under the first category, the pellet gun is not a dangerous weapon.

---

[1] "9 3.32 *Robbery*. (1) Whoever, with intent to steal, takes property from the person or presence of the owner by either of the following means may be imprisoned not more than 10 years:

"(a) By using force against the person of the owner with intent thereby to overcome his physical resistance or physical power of resistance to the taking or carrying away of the property; or

"(b) By threatening the imminent use of force against the person of the owner or of another who is present with intent thereby to compel the owner to acquiesce in the taking or carrying away of the property.

"(2) Whoever violates sub. (1) while armed with a dangerous weapon may be imprisoned not more than 30 years." *See also:* sec. 939.05(2)(b), Stats.

[2] *Rafferty v. State*, 29 Wis.2d 470, 475, 138 N.W.2d 741, 744 (1966).

The second category states that any device designed as a weapon and capable of producing death or great bodily harm is a dangerous weapon. Previously, this court considered whether a pellet gun was designed as a weapon and concluded that it was. *Rafferty v. State,* 29 Wis.2d 470, 475–77, 138 N.W.2d 741, 744 (1966). The trial court was aware of the *Rafferty* decision but held that because the pellet gun was unloaded it was incapable of producing great bodily harm.

The third category holds that any device which, in the manner it is used or intended to be used, is calculated or likely to produce death or great bodily harm is a dangerous weapon. In *Rafferty* the use of the pellet gun as a bludgeon constituted use as a dangerous weapon. The trial court also held that because the pellet gun was not used as a bludgeon, and because there was no evidence that it was intended to be so used, it was not a dangerous weapon under the third category.

At first glance this three-pronged analysis seems correct and the dismissal appropriate. However, by a closer examination of the second definition of "dangerous weapon," we find that the unloaded pellet gun qualifies as a dangerous weapon. It was designed as a weapon and, when used as a bludgeon, is capable of producing death or great bodily harm. This definition does not require that to be dangerous the weapon must be capable of producing great bodily harm only when used in the manner for which it was intended. Because the pellet gun was designed as a weapon and is capable of producing death or great bodily harm, it is a dangerous weapon and the armed robbery charge should not have been dismissed.

In *Boyles v. State,* 46 Wis.2d 473, 477, 175 N.W.2d 277, 279 (1970), this court was faced with the argument that the state must prove that the gun used was in fact a lethal weapon before a person could be con-

victed of attempted armed robbery. In rejecting this argument the court stated:

> "This court in *Rafferty v. State* (1966), 29 Wis.2d 470, 478, 138 N.W.2d 741, cited with approval *Jackson v. State* (1963), 231 Md. 591, 191 Atl.2d 432, which held that a starter pistol which could not discharge a bullet was a dangerous weapon because it *could* be used as a bludgeon and because it had the appearance of a lethal gun." (Emphasis supplied.)

The starter pistol was dangerous not because it had been used as a bludgeon but because it *could* have been used as a bludgeon. The situation in this case is the same. The pellet gun could have been used as a bludgeon; it certainly had the appearance of a lethal gun.[3]

Under stipulated facts of these cases we conclude it cannot be said as a matter of law the pellet gun was not a dangerous weapon.

*By the Court.*—Orders reversed and causes remanded for further proceedings.

---

[3] The defendant cites *Luitze v. State*, 204 Wis. 78, 79, 234 N.W. 382, 383 (1931), in support of his position that the pellet gun was not a dangerous weapon. This case is not controlling because the statute defining a dangerous weapon (sec. 340.40, Stats. 1929), was not the same as our present statute quoted above.