STATE of Wisconsin, Plaintiff-Appellant,

v.

David W. RABE, Defendant-Respondent.

Supreme Court

*No. 79–1445–CR. Argued February 7, 1980.—Decided May 6, 1980.*
(Also reported in 291 N.W.2d 809.)

For the appellant the cause was argued by *David J. Becker,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the respondent the cause was argued by *John E. Tradewell,* assistant state public defender, with whom on the brief was *William F. Bauer,* assistant state public defender.

HEFFERNAN, J.   This appeal, on certification from the court of appeals, stems from a criminal prosecution commenced by the filing of a criminal complaint on February 27, 1979, charging the defendant, David W. Rabe, with four counts of homicide by intoxicated use of a motor vehicle, contrary to sec. 940.09, Stats.  The state seeks review of a pretrial order of the trial court consolidating the four counts charged in the information into a single count.

Two issues are presented on appeal.  First, was the trial court's consolidation order appealable by the state either as a matter of right as a final order, pursuant to sec. 974.05, Stats., or as a permissive appeal from a nonfinal order under sec. 808.03(2).   Second, did the trial court err by ruling that, where a single act of negligence causes multiple deaths, the state is limited to charging only a single count under sec. 940.09, Homicide by Intoxicated User of Vehicle.

In regard to the first issue, we conclude that this court has jurisdiction to hear the present appeal.  Although we agree with the defendant that the trial court's order was not a final order appealable as a matter of right, we nevertheless conclude that the state may, pursuant to sec. 808.03(2), Stats., petition for leave to file an appeal in this criminal action.  We also resolve the second ques-

tion against the defendant, holding that, where multiple deaths result from a defendant's negligent operation of a motor vehicle while under the influence of an intoxicant, the state may charge separate counts of homicide under sec. 940.09 for each death. In accordance with these determinations, we reverse the order of the trial court and remand for further proceedings consistent with this opinion.

The following facts and procedural steps give rise to this appeal.

On the evening of February 23, 1979, the defendant, allegedly while intoxicated, drove his car past a stop sign in rural Dane county and collided in the intersection with a car driven by Randall R. Chambers. Four persons were killed in the accident: Chambers, a passenger in Chambers' car, and two passengers in the defendant's car.

The state filed a complaint charging the defendant with four counts of homicide by intoxicated use of a vehicle under sec. 940.09, Stats. Following the preliminary examination and bindover, an information and amended information were filed, the latter of which charged four counts of homicide under sec. 940.09.

The defendant has filed numerous motions, among which was a motion to consolidate the four counts in the information into one count. The trial court granted the motion, reasoning that the defendant's single act of negligently driving his vehicle while intoxicated could not be charged as a multiple offense. Thereafter, the court entered an order consolidating the four counts into a single count.

Concluding that the trial court's order was a final order appealable as a matter of right, the state filed a notice of appeal. To protect itself if the order were not an appealable final order, the state also filed a petition with the court of appeals for leave to appeal the order pursuant to sec. 808.03(2), Stats.

The court of appeals took jurisdiction of the case, but directed the parties to brief the question of whether the trial court's order was appealable by the state. After the briefs were filed, the court of appeals certified the case to this court pursuant to sec. (Rule) 809.61, Stats., stating that the case presented novel questions regarding Wisconsin criminal procedure and appellate jurisdiction. This court accepted the certification.

We turn first to the defendant's contention that the court of appeals and, in turn, this court[1] lack jurisdiction over this matter because the trial court's order was not appealable by the state either by right or by permission. The prosecution's entitlement to appeal in criminal cases, as a matter of right, is governed by sec. 974.05, Stats., which provides in pertinent part that:

"974.05 **State's appeal.** (1) Within 45 days of entry of the judgment or order to be appealed and in the manner provided for civil appeals under chs. 808 and 809, an appeal may be taken by the state from any:
"(a) Final order or judgment adverse to the state made before jeopardy has attached or after waiver thereof . . . ."

The parties disagree on the definition of finality to be used in determining whether the trial court's pretrial consolidation order is an appealable final order. As we noted recently in *State v. Jenich,* 94 Wis.2d 74, 79, 288 N.W.2d 114 (1980), and *State ex rel. A.E. v. Green Lake County Cir. Ct.,* 94 Wis.2d 98, 101, 288 N.W.2d 125 (1980), determining what orders are final for purposes of appellate review poses recurring questions of statutory interpretation.

---

[1] The issues raised in regard to the state's right to appeal the order are identical regardless of whether they were raised in the court of appeals or, as here, in this court following bypass by certification. Secs. 809.63 and 809.84, Stats. *See also, State v. Barrett,* 89 Wis.2d 367, 371, 280 N.W.2d 114 (1979).

The defendant contends that the definition of a final order found in sec. 808.03(1), Stats., applies to the state's appeal rights under sec. 974.05, because the latter provision permits the state to appeal final orders "in the manner provided for civil appeals under chs. 808 and 809 . . . ." The defendant reasons that, if the "manner" in which the state may take an appeal is governed by ch. 808, then that chapter, and specifically sec. 808.03 (1), must be used to determine what orders are final. In providing for appeals as of right to the court of appeals, sec. 808.03(1) defines a final order or final judgment as one "which disposes of the entire matter in litigation as to one or more of the parties, whether rendered in an action or special proceeding."

The state argues that the more specific state appeal provision, sec. 974.05, Stats., controls over the newer, but more general, sec. 808.03(1), appeal statute. Under this view, the specific test of finality set forth in sec. 808.03(1)—did the order dispose of the "entire matter in litigation"—is not incorporated by reference in sec. 974.05 to criminal appeals by the state. The state argues that the term, "final order," as used in sec. 974.05 has been given a judicial interpretation sufficiently expansive to cover the subject order.

In support of its argument, the state cites *State v. Bagnall,* 61 Wis.2d 297, 302, 212 N.W.2d 122 (1973), and *State v. Antes,* 74 Wis.2d 317, 321–22, 246 N.W.2d 671 (1976). In *Bagnall,* the court held that an order granting a motion to withdraw a guilty plea was a final order appealable by the state under sec. 974.05, Stats. Similarly, in *Antes,* the court held an order dismissing an information charging the defendant with armed robbery, but granting the state leave to amend the charge to robbery, was appealable by the state.

These cases were decided when the general appeal statute provided in part that, to be appealable, an order

had to be a final order affecting a substantial right made in a special proceeding or a final order which in effect determined the action and prevented a judgment from which an appeal could be taken. *See,* sec. 817.33, Stats. (1975). In general, intermediate orders were reviewable only on an appeal from a final judgment or a final order in a special proceeding when they "involv[ed] the merits and necessarily affect[ed] the judgment, appearing upon the record." Sec. 817.34, Stats. (1975). It is clear that the decisions in *Bagnall* and *Antes* as to what constituted appealable orders under sec. 974.05 were compatible with the general definitions of appealability then in effect.

However, those rules were replaced by sec. 808.03(1), Stats., effective August 1, 1978. This provision was in effect when the trial court entered its consolidation order on September 13, 1979. The new provision replaced the long and confusing list of appealable orders under ch. 817 with a simple dichotomy: Orders which "[dispose] of the entire matter in litigation" are appealable by right; all other orders are appealable only by permission.[2] The new definition of an appealable final order is obviously more stringent than its predecessor. Concomitantly, however, the new appeal practice establishes a uniform method and criteria for appealing all nonfinal orders. *See,* sec. 808.03(2) (criteria),[3] sec. 809.50 (pro-

---

[2] Section 808.03 also requires that to be appealable a final order must be entered by being filed as provided in Rule 807.11(2). The entry requirement was complied with in this case.

[3] "808.03(2) APPEALS BY PERMISSION. A judgment or order not appealable as a matter of right under sub. (1) may be appealed to the court of appeals in advance of a final judgment or order upon leave granted by the court if it determines that an appeal will:

"(a) Materially advance the termination of the litigation or clarify further proceedings in the litigation;

"(b) Protect the petitioner from substantial or irreparable injury; or

"(c) Clarify an issue of general importance in the administration of justice."

cedure),[4] Stats. The rationale behind the new procedure is explained in the Legislative Council Note (1977) to sec. 808.03 as follows:

"The recommendation of the National Center for State Courts is that 'interlocutory trial court determinations should be reviewable only at the discretion of the . . .' appellate court. The purpose of the recommendation is to avoid unnecessary interruptions and delay in trial court proceedings caused by multiple appeals and to reduce the burden on the court of appeals of dealing with unnecessary appeals."

Neither logic nor precedent supports the state's contention that the finality of orders sought to be appealed under sec. 974.05, Stats., should be tested by a standard less rigorous than the general definition for final orders set forth in sec. 808.03(1). This statement is especially true in light of our conclusion that, in criminal as well as

---

[4] "809.50 **Rule (Appeal from judgment or order not appealable as of right).** (1) A person shall seek leave of the court to appeal a judgment or order not appealable as of right under s. 808.03(1), by filing within 10 days of the entry of the judgment or order a petition and supporting memorandum, if any. The petition must contain:

"(a) A statement of the issues presented by the controversy;

"(b) A statement of the facts necessary to an understanding of the issues; and

"(c) A statement showing that review of the judgment or order immediately rather than on an appeal from the final judgment in the case or proceeding will materially advance the termination of the litigation or clarify further proceedings therein, protect a party from substantial and irreparable injury, or clarify an issue of general importance in the administration of justice.

"(2) An opposing party in the trial court shall file a response with supporting memorandum, if any, within 10 days of the service of the petition.

"(3) If the court grants leave to appeal, the procedures for appeals from final judgments are applicable to further proceedings in the appeal, except that the entry of the order granting leave to appeal has the effect of the filing of the notice of appeal."

civil cases, a party may avail itself of the permissive appeal procedure set forth in sec. 808.03(2). Moreover, whether the order in this case is tested under the new provision, the old provision, or the asserted case-law definition, it is not an appealable final order.

The order appealed from in this case was labeled by Judge Boll as a consolidation order, which had the effect of merging the four homicide counts charged in the information into a single count alleging four victims. The state argues that the consolidation order was final because, although it was labeled as a consolidation order, it had the effect of dismissing three of the counts. We do not accept this conclusion, because there are significant evidentiary differences between a consolidation of counts and a dismissal of charges. Under the order consolidating the four counts into a single count alleging four victims, the state would not be precluded from proving any or all of the four deaths. If three counts had actually been dismissed, the state would have been limited to proving only the death charged in the undismissed count. Because each of the four victims' deaths remained as a basis of liability under the consolidated charge, we conclude that the order did not "[dispose] of the entire matter in litigation" (sec. 808.03(1), Stats.) and is therefore not a final order appealable by right under sec. 974.05.

This conclusion is supported by the definition of an appealable final order set forth in *Wisconsin Appellate Practice, supra,* sec. 402 at 21–2:

"The requirement that a judgment or order, to be final, must dispose of the entire matter in litigation means that it resolves the merits of the dispute, precluding further proceedings in the action or special proceeding. . . .
". . .
"If an order closes the matter and precludes further hearing and investigation, it is final. An order which

does not completely dispose of the subject matter and settle the rights of the parties is not final . . . ." (Citations omitted.)

■

The order at issue in the present case would be final only if it "dispose[d] of the entire matter in litigation as to one or more of the parties." Tested accordingly, the consolidation order fails the test of finality and is not appealable by right. As we emphasized in both *Jenich* and *State ex rel. A.E.*, "interlocutory or piecemeal appeals are undesirable, especially in criminal prosecutions." *Jenich, supra,* at 79, 80; *State ex rel. A.E., supra,* at 102.

The state's fallback position is that, even if the order were not an appealable final order under sec. 974.05, Stats., the state nevertheless may seek permissive appeals of intermediate orders in criminal cases under sec. 808.03(2), the general permissive appeal provision. The defendant, on the other hand, contends that the state's right to appeal in criminal cases is strictly a statutory right. *See, e.g., State v. Beals,* 52 Wis.2d 599, 191 N.W. 2d 221 (1971). The defendant reasons that, since the statute authorizing the state to appeal in criminal cases, sec. 974.05, contains no express statement that the state may seek permissive appeal from a nonfinal order, no such right exists. We are not persuaded by the defendant's argument.

■

Except for those limited cases where the right to appeal is constitutionally guaranteed (*see, Scheid v. State,* 60 Wis.2d 575, 583a, 211 N.W.2d 458 (1973) (on rehearing)), the rule that appeals are permitted only when statutorily authorized is applicable to all litigants, whether civil or criminal, prosecution or defense.[5] *Thomas/*

---

[5] Under the old appeal procedure, criminal defendants were generally unable to appeal from pre-judgment orders on the theory that such orders merged with the judgment and were reviewable on appeal from the final judgment of conviction. *State v. Mor-*

*Van Dyken Joint Venture v. Van Dyken,* 90 Wis.2d 236, 241, 279 N.W.2d 459 (1979) ; *State v. Beals,* 52 Wis.2d 599, 605, 191 N.W.2d 221 (1971) ; *State v. Koopman,* 34 Wis.2d 204, 206, 148 N.W.2d 671 (1967) ; *In re Fish,* 246 Wis. 474, 476, 17 N.W.2d 558 (1945). Moreover, neither the prosecution nor the defense is expressly authorized under sec. 808.03, Stats., to seek permissive appeals.

We nevertheless conclude that the prosecution and the defense may, under sec. 808.03 (2), Stats., seek permissive appeal of nonfinal orders. That provision is applicable to criminal cases by virtue of sec. 972.11, which provides, in relevant part, that "rules of evidence and practice in civil actions shall be applicable in all criminal proceedings unless the context of a section or rule manifestly requires a different construction."

There is nothing in the statutes which "manifestly requires" construing sec. 808.03 (2), Stats., to limit application for permissive appeal to civil cases only. The chapter discussing criminal appeals in *Wisconsin Appellate Practice, supra,* was written by Howard B. Eisenberg, the then State Public Defender and a member of the rule-drafting committee. He states unequivocally that the new permissive appeal procedure applies to both civil and criminal cases. Ch. 27, sec. 2702 at 167. *Accord, State v. Jenich,* 94 Wis.2d 74, 78; 288 N.W.2d 114 (1980) (n. 3, and accompanying text).

In *State v. Barrett,* 89 Wis.2d 367, 280 N.W.2d 114 (1979), the defendant argued that the state had no right to seek review of decisions by the court of appeals regarding criminal matters, because there was no express statutory authorization for the state to do so. This court disagreed, holding that art. VII, sec. 3 (3) of the Wiscon-

*deszewski,* 68 Wis.2d 649, 229 N.W.2d 642 (1975) ; *State v. Withers,* 61 Wis.2d 37, 211 N.W.2d 456 (1973).

sin Constitution authorized the supreme court to review such cases. The court emphasized that:

"There is nothing in the rule to indicate that the only party who is permitted to file a petition for review in a criminal case is the accused." 89 Wis.2d at 371.

We conclude, therefore, that the court of appeals has jurisdiction to entertain permissive appeals by the state from nonfinal orders entered in criminal actions.

The second, and more significant, issue posited by this appeal is whether the state can charge four counts of homicide by the negligent operation of a vehicle while under the influence of an intoxicant, contrary to sec. 940.09, Stats., although the defendant allegedly caused the four deaths by a single act of negligence when driving while intoxicated. The trial court concluded in its memorandum decision that the four-count information was multiplicitous because it charged a single offense in more than one count.

Multiplicity arises where the defendant is charged in more than one count for a single offense.[6] *United States v. Free,* 574 F.2d 1221 (5th Cir. 1978); *State v. Dreske,* 88 Wis.2d 60, 74, 276 N.W.2d 324 (Ct. Ap. 1979). As we noted in *State v. George,* 69 Wis.2d 92, 230 N.W.2d 253 (1975), multiplicitous charges are impermissible, because they violate the double jeopardy provisions of the state and federal constitutions.[7] Article I, sec. 8, of the

[6] Duplicity presents the inverse problem of multiplicity; duplicity is the joining in a single count of more than one distinct offense. *United States v. Pavloski,* 574 F.2d 933 (7th Cir. 1978).

[7] The fifth amendment former jeopardy provision is applicable to the states through the fourteenth amendment. *Benton v. Maryland,* 395 U.S. 784 (1969). Because of the similarity between the federal and Wisconsin provisions, this court has accepted, where applicable, decisions of the United States Supreme Court as governing the double jeopardy provisions of both constitutions. *See,*

Wisconsin Constitution provides, in language nearly identical to that used in the United States Constitution, that "[n]o person *for the same offense* shall be put twice in jeopardy of punishment." (Emphasis supplied.) Under that provision, the present information, which charges four counts, escapes the prohibition against multiplicity only if the death of each person caused by

*Harrell v. State,* 88 Wis.2d 546, 554, 277 N.W.2d 462 (1979), and cases cited therein.

While the resolution of this and similar problems involving multiplicity have been cast in the general framework of double jeopardy, a recent case, *Whalen v. United States,* — U.S. — (April 16, 1980), indicates some doubt that the federal constitutional prohibition against double jeopardy is implicated in a single state prosecution wherein multiple penalties are sought to be imposed for a single criminal transaction. Justice Blackmun, in a concurring opinion, stated:

"The *only* function the Double Jeopardy Clause serves in cases challenging multiple punishments is to prevent the prosecutor from bringing more charges, and the sentencing court from imposing greater punishments, than the Legislative Branch intended. It serves, in my considered view, nothing more. 'Where consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense.' *Brown v. Ohio,* 432 U.S. 161, 165 (1977).

"Dicta in recent opinions of this Court at least have suggested, and I now think wrongly, that the Double Jeopardy Clause may prevent the imposition of cumulative punishments in situations in which the Legislative Branch *clearly intended* that multiple penalties be imposed for a single criminal transaction. See *Simpson v. United States,* 435 U.S. 6, 11–13 (1978); *Jeffers v. United States,* 432 U.S. 137, 155 (1977) (plurality opinion). I believe that the Court should take the opportunity presented by this case to repudiate those dicta squarely, and to hold clearly that the question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed."

Justices Rehnquist, White, and C. J. Burger in separate opinions agreed with Justice Blackmun's rationale.

the defendant's negligent operation of a motor vehicle while intoxicated constitutes a separate offense under sec. 940.09, Stats.

■

This court and the court of appeals have considered the question of multiplicity in several recent cases. *Harrell v. State, supra; State v. Dreske, supra; Austin v. State,* 86 Wis.2d 213, 222–24, 271 N.W.2d 668 (1978); *Blenski v. State,* 73 Wis.2d 685, 245 N.W.2d 906 (1976). The approach utilized by the Wisconsin courts in evaluating whether a charge is multiplicitous has been two-fold. First, in regard to the question of double jeopardy, the courts have determined whether the severed offenses are "identical in the law and in fact." *State v. Van Meter,* 72 Wis.2d 754, 758, 242 N.W.2d 206 (1976). Because the four offenses charged in the present case are identical in law, "[t]he test for [freedom from] multiplicity is whether each count requires proof of an additional fact which the other count or counts do not." *State v. Dreske, supra,* 88 Wis.2d at 74, quoting from *Blenski v. State, supra,* 73 Wis.2d at 693.

The second component of the test for multiplicity focuses on the legislative intent as to the allowable unit of prosecution under the statute in question.

■

We conclude that the four counts charged in this case related to separate and distinct offenses and, for the reasons discussed below, the counts are not multiplicitous under either component of the test.

■

The test uniformly used in Wisconsin to determine multiplicity is the "additional fact" test, which examines "whether each count requires proof of an additional fact which the other count or counts do not." *United States*

*v. Leo,* 406 F. Supp. 1174, 1178 (E.D. Wis. 1976) ; *Harrell, supra* at 556. Stated by the United States Supreme Court in *Blockburger v. United States,* 284 U.S. 299, 301–02 (1932), the additional fact test was recently reaffirmed and applied by the Court in *Brown v. Ohio,* 432 U.S. 161 (1977), and *Jeffers v. United States,* 432 U.S. 137 (1977).

The United States Supreme Court has identified three areas and interests protected by the double jeopardy provision :

" 'It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.' " *United States v. Wilson,* 420 U.S. 332, 343 (1975).

There are two questions which usually arise in regard to the third protection identified above,[8] the protection at issue in this case. In order to deal with the voluminous

---

[8] The first two protected interests identified above are protected by statute in Wisconsin. Sec. 939.71, Stats., provides:

"Limitation on the number of convictions. If an act forms the basis for a crime punishable under more than one statutory provision of this state or under a statutory provision of this state and the laws of another jurisdiction, a conviction or acquittal on the merits under one provision bars a subsequent prosecution under the other provision unless each provision requires proof of a fact for conviction which the other does not require."

This statutory provision stems from the landmark decision in *Ashe v. Swenson,* 397 U.S. 436 (1970), wherein the Court recognized the doctrine of collateral estoppel as an aspect of the fifth amendment double jeopardy protection against multiplicity. Although *Ashe* was a multiple victim case involving the simultaneous robbery of six poker players and the Court juggled the rubric of the "same evidence test," the decision is largely inapposite to the issues at bar. *See, State v. Elbaum,* 54 Wis.2d 213, 194 N.W.2d 660 (1972). The *Ashe* Court addressed the question of successive trials where a single act produces multiple victims, not the issue of multiple counts tried together.

authority dealing with this aspect of double jeopardy, it is first necessary to identify and distinguish these two common types of cases from the present one.

The prohibition against multiple punishments for the same offense is generally invoked in regard to cases where the defendant is charged with committing both the lesser included offense and the greater offense[9] and cases involving continuous or ongoing offenses.

In the so-called continuous offense cases, the question turns on whether the defendant's repeated commission of the same offense at different places or times constitutes an ongoing crime or several separate offenses. *See, e.g., In re Snow,* 120 U.S. 274 (1887), and its progeny. Almost all the Wisconsin cases dealing with the issue of multiplicity have involved this problem of repeated or ongoing crimes. *See, e.g., Harrell v. State, supra* (holding that two acts of sexual intercourse between the defendant and the same victim, separated by twenty minutes of conversation, constituted two rapes and was not a continuous unitary transaction); *Madison v. Nickel,* 66 Wis.2d 71, 223 N.W.2d 865 (1974) (four obscene magazines sold by the defendant to the same person at the same time and place held to be four violations of ordinance prohibiting sale of obscene printed material); *Melby v. State,* 70 Wis.2d 368, 234 N.W.2d 634 (1975) (upholding the conviction of a defendant for two counts of possession at the same time and place of dangerous drugs based on rationale that the two drugs were dif-

[9] *See, e.g., United States v. Jeffers,* 432 U.S. 137 (1977); *Turner v. State,* 76 Wis.2d 1, 250 N.W.2d 706 (1977); *see also, State v. Ramirez,* 83 Wis.2d 150, 153–54, 265 N.W.2d 274 (1978) (upholding conviction for violation of three separate statutory provisions arising out of single incident).

Sec. 939.65, Stats., provides that:

"If an act forms the basis for a crime punishable under more than one statutory provision, prosecution may proceed under any or all such provisions."

ferent) ; *State v. Elbaum,* 54 Wis.2d 213, 194 N.W.2d 660 (1972) (sec. 939.71, Stats., which prohibits the successive prosecutions if the same act forms the basis of more than one crime, does not bar prosecution for multiple offenses since each charge required proof of an additional fact). The issue in these cases was whether "there was a sufficient break in conduct and time between the acts to constitute separate and distinct [criminal] acts. . . ." *Harrell, supra,* 88 Wis.2d at 565. The focus under the same evidence test in these cases was whether the multiple offenses charged by the prosecution sprang from the same unitary transaction.

In the present case, the question posed in regard to the same evidence test is different, since both sides concede that all four charged offenses were allegedly caused by a single negligent act at a single time and place. The only significant distinction in either law or fact between the four charged offenses is that (1) they involve four different victims and (2) not all four victims were riding in the same vehicle; two were passengers in the defendant's car, and two were in the car struck by the defendant's car in the intersection.

In respect to sec. 940.09, Stats., the application of the additional fact test to situations where a defendant's single act causes multiple deaths indicates that double jeopardy is not offended by charging a separate count for each death. Each count requires proof of additional facts that the other counts do not—namely, the death of the particular victim named in each count and the causal relationship between the defendant's negligent operation of his vehicle while intoxicated and that particular death. Moreover, where, as here, the victims were not all riding in the same vehicle, difficult questions might arise as to the element of causation if the counts are consolidated. If, for instance, the defendant is able

to show that the driver of the other vehicle involved in the accident was negligent in regard to speed or lookout, a situation might arise where the jury thought the defendant's conduct was causal only in regard to the victims who were passengers in his own vehicle.[10] Obviously the facts necessary to prove that the death of each victim was caused by the defendant's negligent conduct could be different:

"In cases where the defendant commits one criminal act which has several victims, courts have used the 'same evidence' test to allow a separate prosecution for each victim. Because the *Blockburger* 'same evidence' test is satisfied if each provision requires proof of a fact which the other does not, it will always sanction multiple trials if there are multiple victims since the identity of the victim is an additional proof of fact in each case." (Citations omitted.) *Double Jeopardy: Multiple Prosecutions Arising from the Same Transaction*, 15 American Crim. L. Rev. 259, 271 (1978).

To use the language of *Gavieres v. United States*, 220 U.S. 338, 343 (1911), a case relied upon in *Blockburger*, "[I]t is apparent that evidence sufficient for conviction under the first charge would not have convicted under the second indictment."

The only Wisconsin case directly on point is *Austin v. State*, 86 Wis.2d 213, 271 N.W.2d 668 (1978), wherein this court stated, "As a general rule when different victims are involved, there is a corresponding number of distinct crimes." *Id.* at 223. In *Austin*, the defendant's single shotgun blast killed one victim and injured

---

[10] Consolidating multiple counts in such a case also presents difficult issues as to joinder and severance and the defendant's right to a unanimous jury verdict. As to the problem of protecting the defendant's right to a unanimous jury verdict, *see generally, United States v. Gipson*, 553 F.2d 453 (5th Cir. 1977); *Holland v. State*, 91 Wis.2d 134, 280 N.W.2d 288 (1979).

another. Although *Austin* is distinguishable from the present case because the offenses there were charged under different statutes (murder and attempted murder), the reasoning regarding multiple victims is sound. In accord with the great weight of authority, we hold that, where the crime is against persons rather than property, there are, as a general rule, as many offenses as individuals affected. *See, e.g., Adams v. State,* 598 P.2d 503 (Alaska 1979) ; *People v. Lovett,* 90 Mich. App. 169, 283 N.W.2d 357 (1979) ; *State v. Callaghan,* 33 Ore. App. 49, 576 P.2d 14 (1978) ; *State v. Dirks,* 35 Ore. App. 33, 581 P.2d 85 (1978) ; *Vigil v. State,* 563 P.2d 1344 (Wyo. 1977) ; *People v. Wieckert,* 554 P.2d 688 (Colo. 1976) ; *State v. Chapple,* 197 Neb. 4, 246 N.W.2d 714 (1976) ; *State v. Prudhomme,* 303 Minn. 376, 228 N.W.2d 243 (1975).[11] This general rule is equally applicable where the multiple deaths are caused by negligent operation or operation of a vehicle while intoxicated.

The defendant argues that the proper test for determining multiplicity is not the additional fact test but is "whether a conviction on one count and an acquittal on another would bring about a contradiction on the face of the verdict." *United States v. Marzani,* 71 F. Supp. 615, 618 (D.D.C. 1947) ; also applied in *Harrell v. Isreal,* 478 F. Supp. 752 (E.D. Wis. 1979) (denying request for writ of habeas corpus; *see, Harrell v. State, supra*). It is difficult to accept the defendant's conclusion that application of the *Marzani* test would lead to a different conclusion in this case regarding multiplicity. If each of the four counts requires proof of an additional fact—the Wisconsin test—a conviction on one count and

[11] This theme is also reflected in Judge Leventhal's concurring opinion in *Irby v. United States,* 390 F.2d 432, 435 (D.C. Cir. 1967), where he advocated that among the factors to be considered in determining multiplicity is the societal interest sought to be protected by the statute(s) in question. *Id.* at 437–39.

an acquittal on another would not be contradictory. Doubt about the additional fact would provide a reasonable explanation for the jury's different verdicts. Under either the additional fact test or the test urged, the defendant's double jeopardy arguments are without merit.

Charging multiple counts, although not violative of double jeopardy, may nevertheless be multiplicitous as contrary to public policy if the legislative intent behind sec. 940.09, Stats., indicates that the allowable unit of prosecution shall be but one count. *Blenski, supra,* 73 Wis.2d at 694. As stated in *State v. Miranda,* 3 Ariz. App. 550, 557, 416 P.2d 444, 451 (1966):

"Pertinent authority establishes that it is the intent of the legislature which controls and that there is no constitutional prohibition against legislation which provides for multiple crimes arising from single acts against multiple victims."

Sec. 940.09, Stats., provides that:

"**Homicide by intoxicated user of vehicle or firearm.** Whoever by the negligent operation or handling of a vehicle, firearm or airgun and while under the influence of an intoxicant causes the death of another is guilty of a Class D felony. No person may be convicted under this section except upon proof of causal negligence in addition to such operation or handling while under the influence of an intoxicant."

The defendant argues that the legislative intent as to the permissible unit of prosecution under sec. 940.09, Stats., is ambiguous and the statute should therefore be interpreted with "lenity" in the defendant's favor. Although the rule of lenity is primarily a federal concept applied to the interpretation of federal statutes (*Bell v. United States,* 349 U.S. 81 (1955); *United States v.*

*Universal C.I.T. Credit Corp.,* 344 U.S. 218, 221 (1952)), the concept is echoed in the familiar Wisconsin rule that "penal statutes are generally construed strictly to safeguard a defendant's rights." *Austin v. State, supra,* 86 Wis.2d at 223. These rules of statutory interpretation are inapplicable, however, where, as under sec. 940.09, the legislative intent respecting the permissible unit of prosecution is unambiguous. *United States v. Batchelder,* 442 U.S. 114, 119–121, 99 S. Ct. 2198, 2202–03 (1979); *Austin v. State, supra,* 86 Wis.2d at 223. The rule of lenity is also inapplicable when its use would contravene legislative purpose. *United States v. Culbert,* 435 U.S. 371 (1978); *State v. Tronca,* 84 Wis.2d 68, 80, 267 N.W. 2d 216 (1978). As noted in *Austin*:

" '[T]he rule of strict construction [of penal statutes] is not violated by taking the common-sense view of the statute as a whole and giving effect to the object of the legislature, if a reasonable construction of the words permits it.' *Zarnott v. Timken-Detroit Axle Co.,* 244 Wis. 596, 600, 13 N.W.2d 53 (1944). As a general rule when different victims are involved, there is a corresponding number of distinct crimes." 86 Wis.2d at 223.

A common-sense analysis of the statutory language used by the legislature in creating sec. 940.09, Stats., viewed in conjunction with the provision's placement in ch. 940 of the criminal code, which enumerates the crimes against life and bodily security, clearly and unambiguously manifests that the legislature intended each death caused by the negligent operation of a motor vehicle by an intoxicated driver to be chargeable as a separate offense. The intent of the legislature as to the allowable unit of prosecution "though not explicit is often obvious." *Harrell, supra,* 88 Wis.2d at 561.

The parties to this appeal vigorously dispute what they perceive to be critical semantic nuances in sec. 940.09, Stats., indicative of the legislative intent as to the allowable unit of prosecution.

The defendant argues that Wisconsin law ties the number of offenses chargeable under one statutory provision to the "conduct" prohibited by that section and that the results of the conduct go to the severity of the penalty, not to the number of offenses. In support of his argument, the defendant points out that a crime is defined in sec. 939.12, Stats.,[12] as conduct, not the resulting consequences of conduct. The defendant reasons that since there was, in his opinion, only one type or episode of culpable conduct here—driving the vehicle negligently while intoxicated—there is only one chargeable offense, regardless of the number of resultant deaths.

The state, on the other hand, contends that the use of the verb, "causes," in sec. 940.09, Stats., indicates that the legislature was concerned with the consequences of the conduct. The state therefore urges that the gravamen of the offense is causing the death of another, with each death constituting a separate offense. The state recognizes that the defendant would have a stronger case if the statute read, "Whoever negligently *operates or handles* a vehicle or firearm while intoxicated causing the death of another." The state reasons that, because the provision reads as it does, however, the legislative intent was to proscribe causing the death of another.[13]

---

[12] That section provides:

"A crime is *conduct* which is prohibited by state law and punishable by fine or imprisonment or both . . . ." (Emphasis supplied.)

[13] The state refers to various cases from other jurisdictions which hold that the gravamen of the offense under statutes similar to sec. 940.09 is not the act of operating a motor vehicle negligently or while intoxicated, but rather, it is the killing of a human being.

Perhaps the most persuasive of these decisions is *Murray v. United States*, 358 A.2d 314 (D.C. App. 1976), where the District of Columbia Court of Appeals stated:

"We believe the negligent homicide statute unambiguously was designed to protect individual victims. . . . The gravamen of the crime is not the act of operating a motor vehicle negligently;

Although we agree with the state's conclusion that the statute unambiguously manifests the legislative intent to allow prosecution of separate offenses for every death caused, we reach that conclusion on the basis of what we deem to be a less tortured interpretation of the statute. The conduct proscribed under the provision is more than either "the negligent operation . . . of a vehicle . . . while under the influence of an intoxicant" (the defendant's position) or "caus[ing] the death of another" (the state's position). The proscribed conduct encompasses both phrases.

Taking, as we advocated in *Austin, supra* at 223, a "common-sense view of the statute as a whole," we conclude that the conduct proscribed under sec. 940.09, Stats., is, as the section provides—causing the death of another by negligent conduct while intoxicated.[14] This conclusion is bolstered by the reminder in the second sentence in sec. 940.09 that:

"No person shall be convicted under this section except upon proof of causal negligence in addition to such operation or handling while under the influence of an intoxicant."

The above sentence emphasizes that the gravamen of the offense is more than just negligent operation of a

rather, it is the killing of a human being. On the authority of *Ladner,* therefore, we hold that the rule of lenity does not apply to situations involving multiple victims where, as here, both the language and logic of the statute reflect the legislature's intent to safeguard the lives of its constituents as individuals." 358 A.2d at 320–21.

[14] By defining crime in sec. 939.12 in terms of conduct proscribed by law, the legislature departed from the previous more limited definition based on criminal "acts" which could "be limited in meaning to a singular muscular contraction . . . ." Remington and Joseph, *Charging, Convicting, and Sentencing the Multiple Criminal Offender,* 1961 Wis. L. Rev. 528, 530.

vehicle while intoxicated, as the defendant contends. Where there is an additional fact necessary to establish a completed offense, in this case the defendant's causal negligence in regard to each victim, separate offenses may be charged.[15]

Although not dispositive of the question, the placement of sec. 940.09, Stats., by the legislature in the portion of the criminal code concerning life and bodily security, rather than in the vehicle code, corroborates the conclusion that the legislature was concerned with protecting lives. Various provisions set forth in the vehicle code dealing with drunk driving have, as their manifest purpose, the object of deterring drunks from driving. *See,* secs. 343.305 and 346.63. By placing sec.

---

[15] Wis J I—Criminal 1185 details the components of the proof necessary to sustain a conviction. That instruction, in addition to emphasizing the factors of the defendant's intoxication, and negligent operation, in other respects also stresses the need for showing that the negligence of the defendant was a cause of the death of a particular victim.

The instruction provides in part:

"The fourth element of this offense requires that the relation of cause and effect exists between the death of ——— and the driving of his vehicle in a negligent manner by the defendant. You are instructed that a relation of cause and effect exists between such negligence and the death of ——— when such negligence was a cause of death. There may be more than one cause of death. The negligence of one person alone might produce it. Before such relation of cause and effect can be found to exist, however, it must appear that the negligence under consideration was a substantial factor in producing the death. That is to say, that it was a factor actually operating and which had substantial effect in producing the death as a natural result."

This emphasis upon "cause" demonstrates that it is the circumstances of the demise of each victim with which the statutory prohibition is concerned. The instruction makes clear that the element, cause of death, may not be identical in respect to each of multiple victims. The instruction, which we approve, shows that multiple deaths will result in multiple counts although all stem from the same conduct.

940.09 in ch. 940, which has as its principal purpose the protection of life and bodily security, the legislature manifested its intent that a negligent drunk driver may properly be charged with a separate offense under sec. 940.09 for each resulting death.

As a final argument, the defendant contends that, in regard to the allowable unit of prosecution, a distinction exists between offenses involving negligent conduct and ones involving intentional conduct. Citing the Remington and Joseph law review article, 1961 Wis. L. Rev., *supra* at 549–50, the defendant reasons that the drunk driver whose negligence causes multiple deaths should not be exposed to multiple punishment. Multiple punishment serves no useful purpose, according to the defendant, when there is no actual or constructive intent, since such a statute is designed to deter negligence, not protect lives.

While it must be admitted that the defendant's argument has some plausibility, it is at odds with the legislature's manifested intent that each death constitutes a separate offense under sec. 940.09, Stats. In defining the crimes against life in ch. 940, the legislature used the same language to describe the essential nature of every crime, intentional and non-intentional ones alike: "Whoever causes the death of another. . . ." The legislature has made no distinction in regard to the allowable unit of prosecution between intentional killings, which the defendant concedes may be charged in multiple counts for multiple victims, and non-intentional killings.

Finally, we note by way of conclusion, that our holding is in accord with the overwhelming weight of modern authority.[16] As noted by one court after an extensive review of the law in this area:

[16] The few cases cited by the defendant to the contrary are all quite old and, in our opinion, out of touch with the growing menace posed by drunk drivers to our citizenry's life and bodily security.

"There are many cases holding that killing by culpable negligence several human beings in one automobile accident constitutes as many separate offenses as there are victims." *Vigil v. State*, 563 P.2d 1344, 1352 (Wyo. 1977).[17]

The defendant asserts that imposing responsibility on him for more than one count of homicide would be based not on his culpability, but on "the roll of the dice." That statement is based on the supposed lack of foreseeability regarding the number of deaths which might arise from driving while intoxicated. We regard this argument as specious.

It is foreseeable that intoxicated use of a motor vehicle poses a substantial risk of causing multiple deaths. The fact situation presented in the present case serves

The entire body of modern Wisconsin case law which deals with the problem of drunk driving is characterized by a recognition of the serious nature of the problem and the need for its prompt eradication. *See, e.g., State v. Neitzel*, 95 Wis.2d 191, 289 N.W.2d 828 (1980) (No. 77–119, slip op.); *Scales v. State*, 64 Wis.2d 485, 219 N.W.2d 286 (1974).

[17] For other cases holding that, when a single negligent act of operating a motor vehicle produces multiple fatalities, there are as many offenses are there are deaths, *see, State v. Miranda*, 3 Ariz. App. 550, 557, 416 P.2d 444, 451–52 (1966); *State v. Whitley*, 382 S.W.2d 665, 667 (Mo. 1964); *State v. Lowe*, 130 So.2d 288, 289 (Fla. Dist. Ct. App. 1961); *Burton v. State*, 226 Miss. 31, 35, 79 P.2d 242, 249 (1955); *Jeppesen v. State*, 154 Neb. 765, 768–69, 49 N.W.2d 611, 613–14 (1951); *State v. Martin*, 154 Ohio St. 539, 541, 96 N.E.2d 776, 778 (1951); *McHugh v. State*, 160 Fla. 823, 824, 36 So.2d 786, 787 (1948); *People v. Allen*, 368 Ill. 368, 379, 14 N.E.2d 397, 405 (1937); *Fleming v. Commonwealth*, 284 Ky. 209, 210, 144 S.W.2d 220, 221 (1940); *Fay v. State*, 62 Okla. Cr. 350, 357, 71 P.2d 768, 771 (1937).

It is clear from the descriptions given in these cases and other more general authorities that these holdings reflect the majority view. *State v. Miranda*, 3 Ariz. App. at 557, 416 P.2d at 451 ("majority view"); *McHugh v. State*, 160 Fla. at 824, 36 So.2d at 787 ("great weight of authority"); *Fay v. State*, 62 Okla. Cr. at 357, 71 P.2d at 771 ("greater weight of respectable authorities");

as an excellent example. When one considers that the defendant had three passengers in his car, two of whom were killed in the accident, it is evident that, in deciding to drive while intoxicated, the defendant knew, or should have known, that he was putting at risk the lives of several persons. The court in *Murray v. United States*, 358 A.2d at 321–22, in rejecting a similar claim of lack of foreseeability that multiple deaths might arise from driving while intoxicated, noted:

"That appellant's conduct would have resulted in the tragedy which occurred was not fortuitous but, unhappily, was almost inevitable. The combination of an undue ingestion of alcohol and the resultant mishandling of automobiles causes awesome carnage on our highways daily. In fairness it can be said that appellant could hardly have chosen a means which would have been more likely to result in injury to many persons."

As the *Murray* court recited, drunken driving "causes awesome carnage on our highways daily." *Id.* One who drives while under the influence of intoxicants may well expect to contribute to "awesome carnage" and, under the Wisconsin statutes, when multiple deaths result, may expect awesome and multiple consequences.

Nevertheless, it should be remembered that the fact multiple counts may be charged for multiple deaths does not mean that in all such cases multiple charges will be filed or that, upon conviction, separate and consecutive sentences will be imposed. The right of the state to so charge in all cases is subject to the prosecutorial charging discretion (*see, State ex rel. Kurkierewicz v. Cannon*, 42 Wis.2d 368, 166 N.W.2d 255 (1969)) and the judicial discretion in sentencing upon conviction (*see, McCleary v. State*, 49 Wis.2d 263, 182 N.W.2d 512 (1971)). On the state of the record here, we have no reason to explore

*Burton v. State*, 226 Miss. at 45, 79 So.2d at 249 ("majority of courts"); 7 Am. Jur. 2d, *Automobiles and Highway Traffic*, sec. 344, p. 890 (1963) ("[m]ost courts").

the latitude to be afforded prosecutors and judges. It is clear, however, that the defendant's fear that in all cases the legal right of the state to charge multiple counts for several deaths arising under sec. 940.09, Stats., will result in disproportionate criminal penalties is unwarranted. To so assert denies the existence of reasonable prosecutorial and judicial discretion. Clearly, just because multiple counts may be charged does not require a prosecutor to so charge in every case where legally possible to do so. Nor is a judge in every case compelled to impose maximum consecutive sentences. By legally recognizing the right to charge multiple offenses under sec. 940.09 where multiple deaths occur, prosecutorial and judicial discretion can be exercised in a manner consistent with the context of the particular prosecution. We emphasize again that we do not on this appeal make any appraisal of the appropriateness of the exercise of prosecutorial discretion in bringing multiple charges. This opinion merely affirms the legal right to so charge.

*By the Court.*—Order vacated, and cause remanded for further proceedings.

COFFEY, J. *(concurring in part).* I concur with the result but disagree with the majority's holding that the order appealed from is not final within sec. 974.05(1), Stats. I disagree with the majority's holding that the state is authorized to seek an appeal of a nonfinal order not enumerated in sec. 974.05. I also disagree with the dictum stating that the defendant may seek a permissive appeal of a nonfinal order in a criminal case.

Both logic and precedent support the state's contention that the finality of orders sought to be reviewed under sec. 974.05, Stats., should be tested by a standard different from the definition of finality for purposes of appeal in civil cases set forth in sec. 808.03(1), Stats. The precedents of this court clearly establish that a final order, for purposes of a state appeal under sec. 974.05

(1), Stats., is one which terminates a criminal special proceeding adversely to the state, even though the underlying criminal action may not be terminated. In *State v. Bagnall,* 61 Wis.2d 297, 212 N.W.2d 122 (1973), the proceeding was a hearing on a motion to withdraw a guilty plea. In *State v. Antes,* 74 Wis.2d 317, 246 N.W.2d 671 (1976), the proceeding was a motion to dismiss an information charging armed robbery. In neither case did the order appealed from prevent a judgment from which an appeal might be taken. In *Bagnall,* the case would have proceeded to trial with the state retaining any appeal rights it might have had if the guilty plea had not been entered. In *Antes,* the state was free to refile an information charging simple robbery. As in *Bagnall,* the only prejudice to the state if the order were not appealable was the loss of an opportunity to contest the issue decided at the hearing on the defendant's motion.

Chapter 187, Laws of 1977, which created ch. 808, Stats., made only one change in the substance of sec. 974.05. It added to sec. 974.05(1)(a), the following underlined words:

"(a) Final order or judgment adverse to the state made before jeopardy has attached or after waiver thereof <u>or after the setting aside of a verdict of guilty or finding of guilty, whether following a trial or a plea of guilty or no contest.</u>" (Emphasis supplied.)

In amending sec. 974.05(1)(a), Stats., it was the intention of the legislature to codify *Bagnall,* an intention which has been frustrated by the majority's overruling of *Bagnall.* The *Bagnall* order is no longer final; therefore it is not appealable by the state under sec. 974.05.

The logic supporting a different concept of finality for state appeals in criminal cases is that the state's right to seek review of an intermediate order disappears when jeopardy attaches. In this case, if the state had not appealed the defendant would have been tried on one

count of homicide when his alleged intoxicated driving caused four deaths. He could have been convicted and sentenced on only one count, if the state had not appealed, leaving three homicides unpunished. The state would be barred from further attempts to prosecute by the doctrine of double jeopardy. Thus, the order of "consolidation" effectively dismissed three of the four homicide counts. I find nothing in the new appeal laws leaving the state to the discretion of a reviewing court as to whether an appeal can be maintained under these circumstances.

In *State v. Barrett,* 89 Wis.2d 367, 280 N.W.2d 144 (1979), we held that there is no state right to seek review in a criminal matter unless affirmatively granted by legislative enactment. The only legislative enactment affirmatively granting a state right of review in a criminal case is sec. 974.05, Stats. Some of the orders made appealable therein would also be subject to discretionary review under sec. 808.03(2), *e.g.,* orders suppressing evidence. Is the majority holding that these orders, made appealable of right under sec. 974.05, Stats., are nevertheless subject to the discretion of the reviewing court whether to hear the appeal? Statutes should not be interpreted so as to promote conflict between their provisions. I would hold that sec. 974.05 is the exclusive means for the state to appeal in a criminal case. I would also hold that the order in question is final within the meaning of sec. 974.05(1)(a).

I am not persuaded that the former state public defender is an authority on the application of the new appeal statutes.[1] Traditionally, the defendant in a crimi-

[1] The rules which the former state public defender drafted are rules of this court in ch. 809, not the statutes creating appeal rights in ch. 808. Sec. (rule) 809.30(1)(h) & (i), provides as follows:

"(h) The defendant shall file an appeal from the judgment of conviction and sentence and, if necessary, from the order of the trial court on the motion for postconviction relief within 10 days of the entry of the order on the postconviction motion.

nal case has been limited to the appeal rights afforded by writ of error, which lies only to review final orders and judgments. Sec. 972.11, Stats., was not construed to extend to criminal defendants, the right to appeal from interlocutory orders as in civil cases in *State v. Beals,* 52 Wis.2d 599, 199 N.W.2d 221 (1971) ; *State v. Withers,* 61 Wis.2d 37, 211 N.W.2d 456 (1973) ; or *State v. Mordeszewski,* 68 Wis.2d 649, 229 N.W.2d 642 (1975). The statute has not changed. Neither should its interpretation.

The court of appeals is authorized to issue a writ of error by sec. 808.02, Stats. I find nothing in the appeal statutes to indicate that criminal defendants are entitled to any greater appeal rights than they had prior to the creation of ch. 808. There is no such thing as a discretionary writ of error. Therefore, I would hold that the appeal by permission provisions of sec. 808.03 (2), Stats., are not applicable in criminal cases. A contrary holding, as the majority seems to have made in this case, will open the flood gates to attempted appeals by the criminal defendants from every pretrial order. The court of appeals has enough to do without considering a flood of discretionary appeals in criminal cases. The holding of the majority that criminal defendants are entitled to seek appeals by permission is bad policy, makes for bad judicial administration, and is not required by the new appeal statutes.

"(i) *Subsequent* proceedings in the appeal are governed by the procedures for civil appeals." (Emphasis supplied.)

There is nothing in any rule of this court to suggest that discretionary civil appeals are available in criminal cases.